UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,  |
|
Plaintiff,  |
|
v.  |
|
BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC,  |
CARGILL, INC.,  | Civil Action No. 3:18-cv-00054
FLOWSERVE CORPORATION,  |
KELSEY-HAYES COMPANY,  |
NCR CORPORATION,  |
NORTHROP GRUMMAN SYSTEMS CORPORATION, and  |
WASTE MANAGEMENT OF OHIO, INC.  |
|
Defendants.  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**CONSENT DECREE**

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | BACKGROUND | 1 |
| II. | JURISDICTION | 5 |
| III. | PARTIES BOUND | 5 |
| IV. | DEFINITIONS | 6 |
| V. | GENERAL PROVISIONS | 14 |
| VI. | PERFORMANCE OF THE WORK | 16 |
| VII. | REMEDY REVIEW | 20 |
| VIII. | PROPERTY REQUIREMENTS | 22 |
| IX. | FINANCIAL ASSURANCE | 33 |
| X. | PAYMENTS FOR RESPONSE COSTS | 39 |
| XI. | DISBURSEMENT OF SPECIAL ACCOUNT FUNDS | 43 |
| XII. | INDEMNIFICATION AND INSURANCE | 48 |
| XIII. | FORCE MAJEURE | 51 |
| XIV. | DISPUTE RESOLUTION | 53 |
| XV. | STIPULATED PENALTIES | 57 |
| XVI. | COVENANTS BY PLAINTIFF | 62 |
| XVII. | COVENANTS BY SETTLING PARTIES | 67 |
| XVIII. | EFFECT OF SETTLEMENT; CONTRIBUTION | 71 |
| XIX. | ACCESS TO INFORMATION | 73 |
| XX. | RETENTION OF RECORDS | 75 |
| XXI. | NOTICES AND SUBMISSIONS | 77 |
| XXII. | RETENTION OF JURISDICTION | 79 |
| XXIII. | APPENDICES | 80 |
| XXIV. | MODIFICATION | 80 |
| XXV. | LODGING AND OPPORTUNITY FOR PUBLIC COMMENT | 81 |
| XXVI. | SIGNATORIES/SERVICE | 81 |
| XXVII. | FINAL JUDGMENT | 82 |

# I.     BACKGROUND

A.      The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607.

B.      The United States in its complaint seeks, *inter alia*: (1) reimbursement of certain costs incurred by EPA and the Department of Justice ("DOJ") for response actions at the North Sanitary (aka "Valleycrest") Landfill Superfund Site in Dayton, Ohio, together with accrued interest; and (2) performance of response actions by the defendants at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 ("NCP").

C.      In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the State of Ohio (the "State") on April 8, 2016, of negotiations with potentially responsible parties ("PRPs") regarding the implementation of the remedial design and remedial action ("RD/RA") for the Site, and EPA has provided the State with an opportunity to participate in such negotiations and be a party to this Consent Decree.  The State has notified EPA that it will not be a party to this Consent Decree.

D.      In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified federal trustees within the United States Department of the Interior on April 8, 2016, of negotiations with PRPs regarding the release of hazardous substances that may have resulted in injury to the natural resources under federal trusteeship and encouraged the trustees to participate in the negotiation of this Consent Decree.

E.      The Settling Parties who have entered into this Consent Decree do not admit any liability to Plaintiff arising out of the transactions or occurrences alleged in the complaint, and they do not acknowledge that the release or threatened release of hazardous substances at or from the Site constitutes an imminent and substantial endangerment to the public health or welfare or the environment.

F.      Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List ("NPL"), set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on May 31, 1994, 59 Fed. Reg. 27989.

G.      In response to a release or a substantial threat of a release of a hazardous substance(s) at or from the Site, on January 21, 1995, the State of Ohio ("State") reached an agreement with a group of PRPs to commence a Remedial Investigation and Feasibility Study ("RI/FS") for the Site pursuant to an agreed administrative order, known as the Director's Final Findings & Orders ("FFO").

H.      The State approved a Remedial Investigation ("RI") Report in May of 2008, and a Feasibility Study ("FS") Report in March of 2011. On July 30, 2012, EPA issued an Addendum to the FS Report ("FS Addendum").

I.      On August 2, 2012, pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the FS and of the proposed plan for remedial action in a major local newspaper of general circulation. EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action. A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Director of the Superfund Division, EPA Region 5, based the selection of the response action.

J.      EPA's decision on the remedial action to be implemented at the Site is embodied in a final Record of Decision ("ROD"), executed on August 16, 2013. The State has concurred on the decision. The ROD includes EPA's explanation for any significant differences between the final plan and the proposed plan as well as a responsiveness summary relating to public comments. Notice of the final plan was published in accordance with Section 117(b) of CERCLA, 42 U.S.C. § 9617(b).

K.      During the performance of the RI/FS, one of the signatories of the FFO – General Motors Corporation ("GM") – declared bankruptcy and ceased performance of response actions at the Site and other sites across the country.   As a result, the United States, acting on behalf of EPA, filed a proof of claim in the GM bankruptcy and ultimately resolved its claim by a negotiated settlement under which EPA received, among other things, an Allowed General Unsecured Claim for the Site ("Allowed Valleycrest Claim") in the amount of $7 million. In re Motors Liquidation Company, et al., Case No. 09-50026 (Bankr. S.D.N.Y.) at Dkt. No. 9604 (Exh, A, ¶ 8) (March 4, 2011) (hereinafter "GM Settlement"). Consistent with the terms of the GM Settlement, all distributions received by EPA on account of the Allowed Valleycrest Claim have been deposited in an interest-bearing special account within the Superfund to be retained and used to fund response actions at the Site. Id. at ¶ 48, Dkt. No. 9943 (March 29, 2011) (Order approving GM Settlement).

L.      This Consent Decree is structured to allow participation by Settling Parties falling into two classes: (1) Settling Work Parties and (2) Other Settling Parties. The Settling Work Parties are agreeing to perform the Work at the Site and reimburse certain government costs, as specified herein. The Other Settling Parties have made payments toward the costs associated with the Site under prior settlements with certain Settling Work Parties. Copies of the prior

settlements have been provided to the Plaintiff, and such agreements show that the Other Settling Parties have received releases from the Settling Work Parties for past and future response costs, and most Other Settling Parties are also entitled to indemnity by one or more of the Settling Work Parties. The Settling Work Parties and Other Settling Parties are referred to herein collectively as the "Settling Parties."

M.     Most of the approximately 102 acres that compromise the Site are owned by The Keystone Gravel Company. In 2006, the Settling Work Parties entered into a settlement agreement with The Keystone Gravel Company and LMS Investments, Inc. under which the Settling Work Parties obtained certain property rights to the portions of the Site owned by The Keystone Gravel Company. In 2011, the Secretary of State for the State of Ohio cancelled the Articles of Incorporation for The Keystone Gravel Company due, among other things, to the company's failure to pay certain taxes within the time period prescribed by law. Based upon a search conducted by the Settling Work Parties, there are no known surviving officers or directors who may act on behalf of The Keystone Gravel Company or LMS Investments, Inc., nor are there any known corporate successors of The Keystone Gravel Company or LMS Investments, Inc.

N.     Based on the information presently available to EPA, EPA believes that the Work will be properly and promptly conducted by Settling Work Parties if conducted in accordance with the requirements of this Consent Decree and its appendices. Solely for the purposes of Section 113(j) of CERCLA, 42 U.S.C. § 9613(j), the remedy set forth in the ROD and the Work to be performed by Settling Work Parties shall constitute a response action taken or ordered by the President for which judicial review shall be limited to the administrative record.

O.     The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.     JURISDICTION

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b).  This Court also has personal jurisdiction over Settling Parties.  Solely for the purposes of this Consent Decree and the underlying complaint, Settling Parties waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District.  Settling Parties shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.     PARTIES BOUND

2.     This Consent Decree is binding upon the United States and upon all Settling Parties and their successors and assigns.  Any change in ownership or corporate status of a Settling Party including, but not limited to, any Transfer of assets or real or personal property, shall in no way alter such Settling Party's responsibilities under this Consent Decree.

3.     Settling Work Parties shall provide a copy of this Consent Decree to each contractor hired to perform the Work required by this Consent Decree and to each person representing any Settling Work Party with respect to the Site or the Work, and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of

this Consent Decree. Settling Work Parties or their contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree. Settling Work Parties shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work in accordance with the terms of this Consent Decree. With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with Settling Work Parties within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV. DEFINITIONS

4.      Unless otherwise expressly provided in this Consent Decree, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or its appendices, the following definitions shall apply solely for purposes of this Consent Decree:

a.      "Affected Property" shall mean all real property at the Site (including, but not limited to, the Keystone Affected Property) and any other real property where EPA determines, at any time, that implementation of the Remedial Action requires (i) access to the real property, (ii) land, water, or other resource use restrictions, and/or (iii) Institutional Controls.

b.      "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675.

c.      "Consent Decree" or CD shall mean this Consent Decree and all appendices attached hereto (listed in Section XXIII). In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

d.      "Day" or "day" shall mean a calendar day.  In computing any period of time under this CD, where the last day would fall on a Saturday, Sunday, or federal or State holiday, the period shall run until the close of business of the next working day.

e.      "DOJ" shall mean the United States Department of Justice and its successor departments, agencies, or instrumentalities.

f.      "Effective Date" shall mean the date upon which the approval of this Consent Decree is recorded on the Court's docket.

g.      "EPA" shall mean the United States Environmental Protection Agency and its successor departments, agencies, or instrumentalities.

h.      "EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

i.      "Future Oversight Costs" shall mean that portion of Future Response Costs that EPA incurs in monitoring and supervising Settling Work Parties' performance of the Work to determine whether such performance is consistent with the requirements of this Consent Decree, including costs incurred in reviewing deliverables submitted pursuant to this Consent Decree, as well as costs incurred in overseeing implementation of the Work; however, Future Oversight Costs do not include, *inter alia*, the costs incurred by the United States pursuant to Paragraph 11 (Emergencies and Releases), Section VII (Remedy Review), Section VIII (Property Requirements), Paragraph 31 (Access to Financial Assurance), and Paragraph 3.2 (Supplemental Investigation) of the SOW, or the costs incurred by the United States in enforcing this CD, including all costs incurred pursuant to Section XIV (Dispute Resolution), and all litigation costs, or the costs incurred by the United States (if any) in modifying or amending the Record of Decision.

j.        "Future Response Costs" shall mean all costs, including, but not limited to, Future Oversight Costs and all other direct and indirect costs, that the United States incurs in reviewing or developing deliverables submitted pursuant to this CD, in overseeing implementation of the Work, or otherwise implementing, overseeing, or enforcing this CD, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Paragraph 11 (Emergencies and Releases), Paragraph 12 (Community Involvement) (including the costs of any technical assistance grant under Section 117(e) of CERCLA, 42 U.S.C. § 9617(e)), Paragraph 31 (Access to Financial Assurance), Section VII (Remedy Review), Section VIII (Property Requirements) (including the cost of attorney time and any monies paid to secure access and/or to secure, implement, monitor, maintain, or enforce Institutional Controls including the amount of just compensation), and Section XIV (Dispute Resolution), and all litigation costs.  Future Response Costs shall also include (1) all Interim Response Costs, and (2) all Interest on those Past Response Costs Settling Work Parties have agreed to pay under this CD that has accrued pursuant to 42 U.S.C. § 9607(a) during the period from April 15, 2016 to the Effective Date.

k.        "Institutional Controls" or "ICs" shall mean Proprietary Controls and state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices that: (a) limit land, water, or other resource use to minimize the potential for human exposure to Waste Material at or in connection with the Site; (b) limit land, water, or other resource use to implement, ensure non-interference with, or ensure the protectiveness of the RA; and/or (c) provide information intended to modify or guide human behavior at or in connection with the Site.

l.  "Interim Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs (a) paid by the United States in connection with the Site between April 15, 2016, and the Effective Date, or (b) incurred prior to the Effective Date but paid after that date.

m.  "Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).  The applicable rate of interest shall be the rate in effect at the time the interest accrues.  The rate of interest is subject to change on October 1 of each year. Rates are available online at http://www.epa.gov/superfund/superfund-interest-rates.

n.  "Interest Earned" shall mean interest earned on amounts in the Valleycrest Landfill Disbursement Special Account, which shall be computed monthly at a rate based on the annual return on investments of the EPA Hazardous Substance Superfund.  The applicable rate of interest shall be the rate in effect at the time the interest accrues.

o.  "Keystone" refers to The Keystone Gravel Company, a corporation organized for profit in the State of Ohio on January 13, 1921, which is also sometimes referred to as Keystone Gravel Co. or The Keystone Gravel Co in real estate tax records and other documents having to do with the Site.

p.  "Keystone Affected Property" shall refer to the collection of parcels owned by The Keystone Gravel Company at the Site, as described in Paragraph 20.a.

q.  "Municipal Solid Waste" or "MSW" shall mean waste material: (a) generated by a household (including a single or multifamily residence) or (b) generated by a commercial, industrial, or institutional entity, to the extent that the waste material (1) is

essentially the same as waste normally generated by a household; (2) is collected and disposed of with other municipal solid waste as part of normal municipal solid waste collection services; and (3) contains a relative quantity of hazardous substances no greater than the relative quantity of hazardous substances contained in waste material generated by a typical single-family household.

r. "National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

s. "OEPA" shall mean the Ohio Environmental Protection Agency and any of its predecessors or successors.

t. "Operation and Maintenance" or "O&M" shall mean all activities required to operate, maintain, and monitor the effectiveness of the RA as specified in the SOW or any EPA-approved O&M Plan.

u. "Other Settling Parties" shall mean the group comprised of particular parties – each of whom is an "Other Settling Party" under this Consent Decree.

v. "Other Settling Party" shall mean a party who, as of the date of lodging of the Consent Decree, has entered into a settlement relating to the Site with one or more of the Settling Work Parties, provided that each such party: (l) is identified in Appendix E (or is the successor in interest to a party listed in Appendix E) and (2) at any given time before or after entry of this Consent Decree, executes the prescribed form of Consent Decree signature page for an Other Settling Party, and such signature page is filed with the Court in this action and served on the Plaintiffs and the Settling Work Parties in accordance with Section XXI (Notices and Submissions). The Department of the Air Force, on behalf of its components at Wright-

Patterson Air Force Base, entered into a settlement relating to the Site with one or more of the Settling Work Parties and shall be classified as an "Other Settling Party" without the need for execution, filing, or service of a separate Consent Decree signature page.

w.     "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

x.     "Parties" shall mean the United States and Settling Parties.

y.     "Past Response Costs" shall mean $1,237,341, which constitutes all costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with the Site through April 15, 2016, plus Interest on all such costs that has accrued pursuant to 42 U.S.C. § 9607(a) through such date.  EPA has determined that its net unreimbursed Past Response Costs total $1,237,341.23.

z.     "Performance Standards" shall mean the cleanup levels and other measures of achievement of the Remedial Action objectives, as set forth in the ROD in Sections 8.1 (Remedial Action Objectives) and 8.2 (Groundwater).

aa.     "Plaintiff" shall mean the United States.

bb.     "Proprietary Controls" shall mean easements or covenants running with the land that (a) limit land, water, or other resource use and/or provide access rights and (b) are created pursuant to common law or statutory law by an instrument that is recorded in the appropriate land records office.

cc.     "RCRA" shall mean the Solid Waste Disposal Act, 42 U.S.C. §§ 6901-6992 (also known as the Resource Conservation and Recovery Act).

dd.     "Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to the Site signed on August 16, 2013, by the Regional Administrator, EPA Region 5, or his/her delegate, and all attachments thereto.  The ROD is attached as Appendix A.

ee.     "Remedial Action" or "RA" shall mean the selected remedy in the ROD.

ff.     "Remedial Design" or "RD" shall mean those activities to be undertaken by Settling Work Parties to develop final plans and specifications for the RA as stated in the SOW.

gg.     "Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

hh.     "Settling Parties" shall mean Settling Work Parties (identified in Appendix D) and Other Settling Parties (identified in Appendix E) that have signed this Consent Decree.  Where distinctions need to be made between the two groups of Settling Parties, the term "Settling Work Parties" and "Other Settling Parties" shall be used.  Where referring to an individual member of the group of "Settling Parties," the singular term "Settling Party" shall be used.

ii.     "Settling Work Parties" shall mean the parties identified in Appendix D. Where referring to an individual member of the group of "Settling Work Parties," the singular term "Settling Work Party" shall be used.

jj.     "Site" shall mean the North Sanitary (aka "Valleycrest") Landfill Superfund Site, encompassing approximately 102 acres, located on both the east and west sides of Valleycrest Drive north of the intersection of Valleycrest Drive and Valley Street in the City of Dayton, Montgomery County, Ohio, and depicted generally on the map attached as Appendix C;

kk.     "State" shall mean the State of Ohio.

ll.      "Statement of Work" or "SOW" shall mean the document describing the activities Settling Work Parties must perform to implement the RD, the RA, and O&M regarding the Site, which is attached as Appendix B.

mm.     "Supervising Contractor" shall mean the principal contractor retained by Settling Work Parties to supervise and direct the implementation of the Work under this Consent Decree.

nn.     "Transfer" shall mean to sell, assign, convey, lease, mortgage, or grant a security interest in, or where used as a noun, a sale, assignment, conveyance, or other disposition of any interest by operation of law or otherwise.

oo.     "United States" shall mean the United States of America and each department, agency, and instrumentality of the United States, including EPA.

pp.     "Valleycrest Landfill Disbursement Special Account" shall mean the special account, within the EPA Hazardous Substance Superfund, established for the Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3), and Paragraph 38 (Valleycrest Landfill Disbursement Special Account) for the disbursement of certain funds obtained by EPA under the GM Settlement.

qq.     "Valleycrest Landfill Special Account" shall mean the special account, within the EPA Hazardous Substance Superfund, established for the Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3).

rr.     "Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33) of CERCLA, 42 U.S.C. § 9601(33); (3) any "solid waste" under

Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); and (4) any "hazardous waste" under Chapter 3734.01(j) of the Ohio Revised Code.

ss.     "Work" shall mean all activities and obligations Settling Work Parties are required to perform under this Consent Decree, except the activities required under Section XX (Retention of Records).

## V.     GENERAL PROVISIONS

5.     Objectives of the Parties.  The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment by the design and implementation of response actions at the Site by Settling Work Parties, to pay for certain response costs of Plaintiff, and to resolve the claims of Plaintiff against Settling Parties as provided in this Consent Decree.

6.     Commitments by Settling Work Parties

a.     Settling Work Parties shall finance and perform the Work in accordance with this Consent Decree and all deliverables developed by Settling Work Parties and approved or modified by EPA pursuant to this Consent Decree.  Settling Work Parties shall pay the United States for its response costs as provided in this CD.

b.     Settling Work Parties obligations to finance and perform the Work, including obligations to pay amounts due under this CD, are joint and several.  In the event of the insolvency of any Settling Work Party or the failure by any Settling Work Party to implement any requirement of this CD, the remaining Settling Work Parties shall complete all such requirements.

c.     The settlement agreements between the Settling Work Parties and Other Settling Parties are not abrogated by this CD and remain enforceable in accordance with their

terms.  Settling Work Parties' obligations under this Consent Decree shall be independent of and unaffected by any nonperformance by Other Settling Parties of obligations under such settlement agreements and shall remain in full force and effect regardless of any actions taken, or not taken, by one or more of the Other Settling Parties.

7.    Compliance with Applicable Law.  Nothing in this Consent Decree limits Settling Work Parties' obligations to comply with the requirements of all applicable federal and state laws and regulations.  Settling Work Parties must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the ROD and the SOW.  The activities conducted pursuant to this CD, if approved by EPA, shall be deemed to be consistent with the NCP as provided in Section 300.700(c)(3)(ii) of the NCP.

8.    Permits.

a.    As provided in Section 121(e) of CERCLA, 42 U.S.C. § 9621(e), and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work).  Where any portion of the Work that is not on-site requires a federal or state permit or approval, Settling Work Parties shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b.    Settling Work Parties may seek relief under the provisions of Section XIII (Force Majeure) for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit or approval referenced in Paragraph 8.a and required for the Work, provided that they have submitted timely and complete applications and taken all other actions necessary to obtain all such permits or approvals.

c.	This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

## VI.	PERFORMANCE OF THE WORK

9.	Coordination and Supervision.

a.	Project Coordinators.

(1)	Settling Work Parties' Project Coordinator must have sufficient technical expertise to coordinate the Work.   Settling Work Parties' Project Coordinator may not be an attorney representing any Settling Party in this matter and may not act as the Supervising Contractor.  Settling Work Parties' Project Coordinator may assign other representatives, including other contractors, to assist in coordinating the Work.

(2)	EPA shall designate and notify the Settling Work Parties of its Project Coordinator and Alternate Project Coordinator.  EPA may designate other representatives, which may include its employees, contractors and/or consultants, to oversee the Work.  EPA's Project Coordinator/Alternate Project Coordinator will have the same authority as a remedial project manager and/or an on-scene coordinator, as described in the NCP.  This includes the authority to halt the Work and/or to conduct or direct any necessary response action when he or she determines that conditions at the Site constitute an emergency or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

(3)	Settling Work Parties' Project Coordinator shall meet with EPA's Project Coordinator at least monthly, unless EPA determines in any particular month that the meeting is unnecessary or that another form of communication (e.g. conference call) is sufficient.

b.    Supervising Contractor.  Settling Work Parties' proposed Supervising Contractor must have sufficient technical expertise to supervise the Work and a quality assurance system that complies with ANSI/ASQC E4-2004, *Quality Systems for Environmental Data and Technology Programs: Requirements with Guidance for Use* (American National Standard, 2004).

c.    Procedures for Disapproval/Notice to Proceed.

(1)    Settling Work Parties shall notify EPA, within 21 days after the Effective Date, of the name(s), contact information and qualifications of the Settling Work Parties' proposed Project Coordinator and Supervising Contractor.

(2)    EPA, after a reasonable opportunity for review and comment by the State, shall issue notices of disapproval and/or authorizations to proceed regarding the proposed Project Coordinator and Supervising Contractor, as applicable.  If EPA issues a notice of disapproval, Settling Work Parties shall, within 30 days, submit to EPA a list of supplemental proposed Project Coordinators and/or Supervising Contractors, as applicable, including a description of the qualifications of each.  EPA shall issue a notice of disapproval or authorization to proceed regarding each supplemental proposed coordinator and/or contractor.  Settling Work Parties may select any coordinator/contractor covered by an authorization to proceed and shall, within 21 days, notify EPA of Settling Work Parties' selection.

(3)    Settling Work Parties may change their Project Coordinator and/or Supervising Contractor, as applicable, by following the procedures of Paragraphs 9.c(1) and 9.c(2).

10.     <u>Performance of Work</u>.

      a.      Settling Work Parties shall: (a) develop the Remedial Design; (b) perform the Remedial Action; and (c) operate, maintain, and monitor the effectiveness of the Remedial Action, and they shall do so all in accordance with the SOW and all EPA-approved, conditionally-approved, or modified deliverables as required by the SOW.  All deliverables required to be submitted for approval under the Consent Decree or SOW shall be subject to approval by EPA in accordance with the procedures set forth in Paragraph 6.6 (Approval of Deliverables) of the SOW.

      b.      Subject to the requirements and limitations set forth in Paragraph 3.2 of the SOW, the Settling Work Parties may implement voluntary supplemental work relating to Site conditions and/or issues relating to the remedial design not specifically covered by the SOW and, based upon such supplemental work, make submittals and recommendations to EPA. EPA shall review any such submittals and recommendations in accordance with Paragraph 3.2 of the SOW.

      c.      As of the Effective Date, the Administrative Order on Consent ("AOC"), which has been in effect since September 10, 1998 in the Matter of North Sanitary Landfill (Docket No. V-W-98-C-496), is hereby terminated, provided that the duties of the settling Respondents under the AOC to operate and maintain the Landfill Gas Abatement System in accordance with EPA-approved plans are hereby subsumed as an obligation of this Consent Decree by the Settling Work Parties.  Such duties shall continue until such time that the Settling Work Parties replace the existing Landfill Gas and Abatement system with the one that they are required to design and construct in accordance with the ROD, this Consent Decree, and the

SOW.  All billings and collections under Section VII ("Reimbursement of Costs") of the AOC are fully resolved and hereby terminated.

11.     <u>Emergencies and Releases</u>.  Settling Work Parties shall comply with the emergency response and reporting requirements under Paragraph 4.5 (Emergency Response Reporting) of the SOW.  Subject to Section XVI (Covenants by Plaintiff), nothing in this CD, including the emergency response and reporting requirement under Paragraph 4.5 of the SOW, limits any authority of Plaintiff: (a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or (b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site.  If, due to Settling Work Parties' failure to take appropriate response actions and reporting requirements under Paragraph 4.5 of the SOW, EPA takes such action instead, then Settling Work Parties shall reimburse EPA under Section X (Payments for Response Costs) for all costs of the response action.

12.     <u>Community Involvement</u>.   If requested by EPA, Settling Work Parties shall conduct community involvement activities under EPA's oversight as provided for in, and in accordance with, Section 2 (Community Involvement) of the SOW.  Such activities may include, but are not limited to, designation of a Community Involvement Coordinator. Costs incurred by the United States under this Section constitute Future Response Costs to be reimbursed under Paragraph 35 (Payments for Response Costs).

13.     Modification of SOW or Related Deliverables.

a.     If EPA determines that it is necessary to modify the Work specified in the SOW and/or in deliverables developed under the SOW in order to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, and such modification is consistent with the Scope of the Remedy set forth in Paragraph 1.3 of the SOW, then EPA may notify Settling Work Parties of such modification.  If Settling Work Parties object to the modification they may, within 30 days after EPA's notification, seek dispute resolution under Section XIV.

b.     The SOW and/or related work plans shall be modified: (1) in accordance with the modification issued by EPA, or (2) if Settling Work Parties invoke dispute resolution, in accordance with the final resolution of the dispute.  The modification shall be incorporated into and enforceable under this Consent Decree, and Settling Work Parties shall implement all work required by such modification.  Settling Work Parties shall incorporate the modification into the deliverables required under the SOW, as appropriate.

c.     Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

14.     Nothing in this Consent Decree, the SOW, or any deliverable required under the SOW constitutes a warranty or representation of any kind by Plaintiff that compliance with the work requirements set forth in the SOW or related deliverables will achieve the Performance Standards.

# VII.   REMEDY REVIEW

15.     Periodic Review.  Settling Work Parties shall conduct, in accordance with the SOW, studies and investigations to support EPA's reviews under Section 121(c) of CERCLA, 42

U.S.C. § 9621(c), and applicable regulations, of whether the RA is protective of human health and the environment.

16.     EPA Selection of Further Response Actions.  If EPA determines, at any time, that the RA is not protective of human health and the environment, EPA may select further response actions for the Site in accordance with the requirements of CERCLA and the NCP.

17.     Opportunity To Comment.  Settling Work Parties and, if required by Sections 113(k)(2) or 117 of CERCLA, 42 U.S.C. § 9613(k)(2) or 9617, the public, will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to Section 121(c) of CERCLA and to submit written comments for the record during the comment period.

18.     Settling Work Parties' Obligation To Perform Further Response Actions.  If EPA selects further response actions relating to the Site, EPA may require Settling Work Parties to perform such further response actions, but only to the extent that the reopener conditions in Paragraphs 72 or 73 (United States' Pre- and Post-Certification Reservations) are satisfied. Settling Work Parties may invoke the procedures set forth in Section XIV (Dispute Resolution) to dispute (a) EPA's determination that the reopener conditions of Paragraph 72 or Paragraph 73 are satisfied, (b) EPA's determination that the RA is not protective of human health and the environment, or (c) EPA's selection of the further response actions.  Disputes regarding EPA's determination that the RA is not protective or EPA's selection of further response actions shall be resolved pursuant to Paragraph 56 (Record Review).

19.     Submission of Plans.  If Settling Work Parties are required to perform further response actions pursuant to Paragraph 18, they shall submit a plan for such response action to EPA for approval in accordance with the procedures of Section VI (Performance of the Work by

Settling Work Parties).  Settling Work Parties shall implement the approved plan in accordance with this Consent Decree.

# VIII.    PROPERTY REQUIREMENTS

20.    <u>Actions Pertaining to the Keystone Affected Properties</u>:

a.    The Keystone Gravel Company ("Keystone"), which owns most of the 102 acres that comprise the Site, and LMS Investments, Inc., entered in a settlement agreement with Settling Work Parties in April of 2006, ("Keystone Settlement") which gave to the Settling Work Parties, among other things, certain rights relating to the following 14 parcels, collectively known as the "Keystone Affected Property":

| | |
|---|---|
| R72-16704-0012 | R72-16704-0064 |
| R72-16704-0011 | R72-16704-0004 |
| R72-16704-0051 | R72-16703-0016 |
| R72-16704-0049 | R72-16703-0021 |
| R72-16704-0055 | R72-16703-0017 |
| R72-16704-0014 | R72-16703-0018 |
| R72-16704-0005 | R72-16714-0023 |

With respect to the Keystone Affected Property, the Settling Work Parties shall take the following actions:

(1)    *Amendment of Environmental Covenant*:  The Settling Work Parties shall obtain an amendment of the environment covenant ("EC") granted to them by Keystone on July 18, 2007 under the Ohio Uniform Environmental Covenants Act, O.R.C. §§ 5301.80 to 5301.92.  This amended EC ("Amended EC") shall substantially comport with the form attached hereto as Appendix F and shall (i) limit the use of the Keystone Affected Property to include all of the restrictions set forth in Paragraph 25 (Land, Water, or Other Use Restrictions) below that are included within the Institutional Controls Implementation and Assurance Plan ("ICIAP")

approved by EPA in accordance with Section 6 (Deliverables) of the SOW, (ii) provide EPA and its representatives, contractors, and subcontractors, with access at all reasonable times to the Keystone Affected Property for the purpose of conducting any activity regarding the Consent Decree, including those activities listed Paragraph 24 (Access Requirements) that are included within the EPA-approved ICIAP, and (iii) grant to EPA the right to seek judicial enforcement of the Amended EC against Keystone and all future owners or transferees of the Keystone Affected Property.  The Settling Work Parties shall record the Amended EC with the County Recorder for Montgomery County, Ohio.  To obtain the amendment, the Settling Work Parties shall petition the Ohio Environmental Protection Agency ("OEPA") for an amendment of the EC under the authority granted to OEPA by O.R.C. § 5301.90(A)(2) and shall move for the Court (or another court of competent jurisdiction) to find under O.R.C. § 5301.90(A)(3) that Keystone no longer exists or cannot be located or identified with the exercise of reasonable diligence.  In the event that OEPA denies the petition, or in the event that this Court (or another court of competent jurisdiction) declines to enter a finding that would allow the EC to be amended in accordance with O.R.C. § 5301.90(A), the Settling Work Parties shall, within 60 days of the first occurrence of either event, move the Court to appoint a receiver who can act on behalf of Keystone for the purpose of executing the Amended EC, or alternatively, within the same time period, the Settling Work Parties shall file papers for the same purpose in any other court with jurisdiction to appoint a receiver on behalf Keystone, provided that the Settling Work Parties provide the United States with written notice at least 30 days prior to filing such papers with this Court or other court with jurisdiction to appoint a receiver. The Settling Work Parties shall be responsible for paying all fees and costs billed by the receiver in connection with the amendment of the EC.

(2) *Subordination of Third Party Interests*:  The Settling Work Parties shall complete a title commitment for the Keystone Affected Property to determine whether a third-party has an interest in such properties that would limit or impair EPA's rights under the Amended EC.  In the event that a third-party has an on-going interest in the Keystone Affected Property that limits or impairs EPA's rights under the Amended EC, the Settling Work Parties shall use best efforts to secure the third-party's cooperation in subordinating that interest to EPA's interest.

(3) *Survey of Keystone Affected Property*:  The Settling Work Parties shall coordinate with EPA to update a survey of the Keystone Affected Property in the event that EPA determines such an update is necessary.

(4) *Safeguarding the Keystone Affected Property*:  The Settling Work Parties shall repair and maintain fencing and take all other actions necessary to prevent vandals or unauthorized personnel from entering the Keystone Affected Property.  The Settling Work Parties shall continue to safeguard the property for a period of 30 years or until EPA's Certification of Work Completion under Paragraph 4.9 of the SOW, whichever is later, unless the property is transferred in accordance with Paragraph 20.b, in which event the Settling Work Parties' obligations under this Subparagraph 20.a(4) shall terminate upon date of the transfer.

b. *Transfer of Keystone Affected Property to Third-Party*:  Under the Keystone Settlement, the Settling Work Parties obtained, among other things, the right to direct Keystone to transfer a fee simple interest in parcels that make up the Keystone Affected Property to one or more persons or entities.  In the event that the Settling Work Parties wish to exercise this right, they shall do so in accordance with the following procedures:

(1)     At any time after lodging of the Consent Decree, Settling Work Parties may propose to EPA a person or entity who is interested in becoming an owner of one or more of the parcels making up the Keystone Affected Property ("New Site Owner").  In making such a proposal, the Settling Work Parties shall identify (i) the New Site Owner's intended use of the parcel (or parcels), (ii) the proposed purchase price (if any) to be paid by the New Site Owner, (iii) the estimated fair market value ("FMV") of the parcel (or parcels) as of the Date that the construction of the Remedial Action was (or will be) completed, and (iv) any and all affiliations or connections between the New Site Owner and one or more of the Settling Work Parties. In addition, in the event that the Settling Work Parties are aware of any facts or circumstances that would support an allegation that the New Site Owner is potentially liable for contamination at the Site under Section 107 of CERCLA, 42 U.S.C. § 9607, the Settling Work Parties shall disclose such facts and circumstances to EPA at same the time that they submit their proposal to EPA under this Subparagraph 20.b(1).  The Settling Work Parties shall estimate the FMV of the parcel (or parcels) by analyzing the sale price of comparable properties in Montgomery County, Ohio.  In the event that the Settling Work Parties are unable to identify any such comparable sales, they shall publish a notice of the proposed sale in a daily newspaper of general circulation in Montgomery County, Ohio, and solicit competing offers for a period of at least 30 days.  Any and all competing offers received by the Settling Work Parties shall be disclosed by the Settling Work Parties at the same time that they submit their proposal to EPA under this Subparagraph 20.b(1).

(2)     EPA, after an opportunity for review and comment by the State of Ohio of no more than 45 Days, shall issue a notice of approval or disapproval regarding the New Site Owner.

(3)     No later than 120 Days after receipt of approval by EPA of the

proposed New Site Owner, the Settling Work Parties shall either (i) move the Court to appoint a

receiver who can act on behalf of Keystone for the purpose of executing instruments necessary to

complete the transfer to the New Site Owner or (ii) file papers for the same purpose in any other

court with jurisdiction to appoint a receiver on behalf of Keystone, provided that the Settling

Work Parties provide the United States with written notice at least 30 days prior to filing such

papers.   The Settling Work Parties shall be responsible for paying all fees and costs billed by the

receiver in connection with the transfer to the New Site Owner.  In the event that EPA

disapproves of the New Site Owner, the Settling Work Parties may challenge such disapproval

under Section XIV (Dispute Resolution).

c.      In the event that the transfer from Keystone to the New Site Owner

generates any sale proceeds, such proceeds shall be used to reimburse the Settling Work Parties

for all payments made to the Keystone Receiver as of the date of the transfer.  Any remaining

proceeds ("Net Proceeds") shall be shared by EPA and the Settling Work Parties, with 15% of

the Net Proceeds going to EPA and 85% of the Net Proceeds going to the Settling Work Parties.

Payment of EPA's share of the Net Proceeds shall be paid in accordance with payment

instructions set forth in Paragraph 36 ("Payment Instructions for Settling Work Parties").   Such

proceeds shall be deposited by EPA in the Valleycrest Landfill Special Account to be retained

and used to conduct or finance response actions at or in connection with the Site, or to be

transferred by EPA to the EPA Hazardous Substance Superfund, provided, however, that EPA

may deposit the proceeds directly into the EPA Hazardous Substance Superfund if, at the time

the payment is received, EPA estimates that the Valleycrest Landfill Special Account balance is

sufficient to address currently anticipated future response actions to be conducted or financed by

26

EPA at or in connection with the Site. Any decision by EPA to deposit a Net Proceeds payment directly into the EPA Hazardous Substance Superfund for this reason shall not be subject to challenge by Settling Work Parties pursuant to the dispute resolution provisions of this CD or in any other forum.

21. <u>Affected Properties Owned by Settling Parties</u>: Each Settling Party that owns an Affected Property ("Owner SD") shall take the actions set forth in Subparagraphs 21.a to 21.f below. In the event that an Owner SD is also an Other Settling Party, the Settling Work Parties shall use best efforts to cause the Owner SD to comply with the requirements of this Paragraph 21.

a. The Owner SD shall (i) provide the United States and the Settling Work Parties – together with their representatives, contractors, and subcontractors – with access at all reasonable times to such Affected Property to conduct any activity regarding the Consent Decree, including those activities listed in Paragraph 24 (Access Requirements) that are included within the EPA-approved ICIAP and (ii) refrain from using such Affected Property in any manner that EPA determines will pose an unacceptable risk to human health or the environment due to Waste Material, or interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action, including the restrictions listed in Paragraph 25 (Land, Water, or Other Resource Use Restrictions) that are included within the EPA-approved ICIAP).

b. The Owner SD shall execute and record an environmental covenant that comports with the requirements and procedures of the Ohio Uniform Environmental Covenants Act, O.R.C. § 5301.80 to 5301.92, and with the requirements of the EPA-approved ICIAP. The environmental covenant shall (i) grant a right of access to conduct any activity regarding the

Consent Decree, including those activities listed in Paragraph 24 (Access Requirements) that are included with the EPA-approved ICIAP, and (ii) grant the right to enforce land, water, or other use restrictions set forth in Paragraph 25 (Land, Water, or Other Use Restrictions) that are included within the EPA-approved ICIAP. The grantees of such rights shall include, among others, EPA and its representatives and contractors.

    c.  Within 30 days of the Effective Date or within 30 days of the date on which its signature page is filed with the Court in this action, whichever is later, the Owner SD shall, with the help of the Settling Work Parties, prepare and submit for EPA approval a notice to be filed regarding its Affected Property in the appropriate land records. The notice must (i) include a proper legal description of the Affected Property, (ii) provide notice to all successors-in-title that (a) the Affected Property is part of, or related to, the Site, (b) EPA has selected a remedy for the Site, and (c) potentially responsible parties have entered into a Consent Decree requiring implementation of such remedy, and (iii) identify the United States District Court for Southern District of Ohio, the name and civil action number of this case, and the date that the Consent Decree was entered by the Court. The Owner SD, or the Settling Work Parties acting on behalf of the Owner SD, shall record the notice within 10 days after EPA's approval of the notice and submit to EPA, within 10 days thereafter, a certified copy of the recorded notice.

    d.  The Owner SD shall not transfer its Affected Property unless and until it has met two requirements. First, the Owner SD must secure EPA's approval of, and transferee's consent to, an agreement that (a) is enforceable by Settling Work Parties and the United States and (b) requires the transferee to provide access to and to refrain from using the Affected Property to the same extent as provided under the EPA-approved ICIAP. Second, the Owner SD must have executed and recorded the environmental covenant in accordance with

Subparagraphs 21.b and c above. To demonstrate compliance with the first requirement, Settling Work Parties may provide EPA with an agreement, substantially identical in form to the agreement set forth at Appendix G, that has been signed and notarized by the transferee.

e.      Prior to entering into a contract to transfer its Affected Property, or 60 days prior to transferring the Affected Property, whichever is earlier, the Owner SD shall (i) notify the proposed transferee that EPA has selected a remedy regarding the Site, that potentially responsible parties have entered into a Consent Decree requiring implementation of such remedy, and that the United States District Court for the Southern District of Ohio has entered the Consent Decree (identifying the name and civil action of this case and the date that the Consent Decree was entered by the Court), and (ii) notify EPA of the name and address of the proposed transferee and provide EPA with a copy of the notice that it provided to the proposed transferee.

f.      In the event of any Transfer of the Affected Property, unless the United States otherwise consents in writing, the Owner SD shall continue to comply with its obligations under this Paragraph 21.

22.     <u>Affected Properties Owned by Non-Settling Parties</u>:   With respect to any Affected Property owned by any party that has not entered into this Consent Decree ("Non-Settling Party"), other than Keystone, the Settling Work Parties shall take the following actions:

a.      The Settling Work Parties shall use best efforts to secure from such Non-Settling Party an agreement, enforceable by the Settling Work Parties and the United States, under which the Non-Settling Party shall (i) provide the United States and the Settling Work Parties – together with their representatives, contractors, and subcontractors – with access at all reasonable times to such Affected Property to conduct any activity regarding the Consent

Decree, including those activities listed in Paragraph 24 (Access Requirements) that are included within the EPA-approved ICIAP, and (ii) refrain from using such Affected Property in any manner that EPA determines will pose and unacceptable risk to human health or the environment due to Waste Material, or interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action, including the restrictions listed in Paragraph 25 (Land, Water, or Other Resource Use Restrictions) that are included with the EPA-approved ICIAP.

   b.  The Settling Work Parties shall use best efforts to secure the Non-Settling Party's cooperation in executing and recording an environmental covenant that comports with the requirements and procedures of the Ohio Uniform Environmental Covenants Act, O.R.C. §§ 5301.80 to 5301.92, and with EPA-approved ICIAP. The environmental covenant shall (i) grant a right of access to conduct any activity regarding the Consent Decree, including those activities listed in Paragraph 24 (Access Requirements) that are included within the ICIAP, and (ii) grant the right to enforce land, water, or other use restrictions set forth in Paragraph 25 (Land, Water, or Other Use Restrictions) that are included within the EPA-approved ICIAP. The grantees of such rights shall include, among others, EPA and its representatives and contractors.

   23.  <u>Best Efforts</u>. As used in this Section VIII (Property Requirements), the term "best efforts" means the efforts that a reasonable person in the position of the Setting Work Parties would use so as to achieve the goal in a timely manner, including the cost of employing professional assistance and the payment of reasonable sums of money to secure or amend Proprietary Controls, agreements, releases, subordinations, modifications, or relocations of prior encumbrances (e.g., prior liens, claims, rights such as easements, and mortgages) that affect title

to any Affected Property, as applicable. If the Settling Work Parties are unable to accomplish what is required through best efforts in a timely manner, they shall notify the United States and EPA, and include a description of the steps taken to comply with the requirements. If the United States deems it appropriate, it may assist the Settling Work Parties, or take independent action, in obtaining such Proprietary Controls, agreements, releases, subordinations, modifications, or relocations of prior encumbrances (e.g., prior liens, claims, rights such as easements, and mortgages) that affect title to the Affected Property, as applicable. All costs incurred by the United States in providing such assistance or taking such action, including the cost of attorney time and the amount of monetary consideration or just compensation paid, constitute Future Response Costs to be reimbursed under Section X (Payments for Response Costs).

24. <u>Access Requirements</u>. In submitting the ICIAP to EPA for review and approval in accordance with Section 6 (Deliverables) of the SOW, the Settling Work Parties shall propose and identify, by parcel number, each Affected Property where implementation of the Remedial Action will require access. The following is a list of activities for which access is required for the Affected Properties, provided, however, that those activities listed in Subparagraph 24.h shall not apply to Affected Properties owned by Other Settling Parties or by Non-Settling Parties:

    a.    Monitoring the Work;

    b.    Verifying any data or information submitted to the United States;

    c.    Conducting investigations regarding contamination at or near the Site;

    d.    Obtaining samples;

    e.    Assessing the need for, planning, or implementing additional response actions at or near the Site;

f.　　Assessing implementation of quality assurance and quality control practices as defined in the approved construction quality assurance quality control plan as provided in the SOW;

g.　　Implementing the Work pursuant to the conditions set forth in Paragraph 76 (Work Takeover);

h.　　Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Work Parties or their agents, consistent with Section XIX (Access to Information);

i.　　Assessing Settling Parties' compliance with the CD;

j.　　Determining whether the Affected Property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted under the CD; and

k.　　Implementing, monitoring, maintaining, reporting on, and enforcing any Institutional Controls.

25.　　<u>Land, Water, or Other Use Restrictions</u>.  In submitting the ICIAP to EPA for review and approval in accordance with Section 6 (Deliverables) of the SOW, the Settling Work Parties shall propose and identify, by parcel number, each Affected Property where implementation of the Remedial Action will require land, water, or other resource use restrictions, and/or Institutional Controls.  For each Affected Property, the ICIAP shall include one or more of the following use restrictions as appropriate depending on the location of the property, its proximity to contamination, or its use in implementing or monitoring the Remedial Action:

a.　　Restrictions upon activities that could interfere with the Remedial Action;

b.　　Restrictions on the use of contaminated groundwater;

c.      Restrictions on activities that could result in exposure to contaminants in surface and subsurface soils and groundwater; and

d.      Restrictions on the construction of new structures on the Site where such construction activities could interfere with the Remedial Action or result in the mobilization of contamination.

26.      Notwithstanding any provision of the Consent Decree, the United States retains all of its access authorities and rights, as well as all of its rights to require Institutional Controls, including enforcement authorities related thereto, under CERCLA, RCRA, and any other applicable statute or regulations.

## IX.      FINANCIAL ASSURANCE

27.      In order to ensure completion of the Work, Settling Work Parties shall secure financial assurance for the benefit of EPA, initially in the amount of $33.5 million ("Estimated Cost of Work Funded by Settling Work Parties").  The financial assurance must be one or more of the mechanisms listed below, in a form substantially identical to the relevant sample documents available under the "Financial Assurance – Settlements" category on the Cleanup Enforcement Model Language and Sample Documents website at http://cfpub.epa.gov/compliance/models/, and satisfactory to EPA.  Settling Work Parties may use multiple mechanisms if they are limited to surety bonds guaranteeing payment, letters of credit, trust funds, and/or insurance policies.

a.      A surety bond guaranteeing payment and/or performance of the Work that is issued by a surety company among those listed as acceptable sureties on federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

b.      An irrevocable letter of credit, payable to or at the direction of EPA, that is issued by an entity that has the authority to issue letters of credit and whose letter-of-credit operations are regulated and examined by a federal or state agency;

c.      A trust fund established for the benefit of EPA that is administered by a trustee that has the authority to act as a trustee and whose trust operations are regulated and examined by a federal or state agency;

d.      A policy of insurance that provides EPA with acceptable rights as a beneficiary thereof and that is issued by an insurance carrier that has the authority to issue insurance policies in the applicable jurisdiction(s) and whose insurance operations are regulated and examined by a federal or state agency;

e.      A demonstration by one or more Settling Work Parties that each such Settling Work Party meets the relevant financial test criteria of 40 C.F.R. § 264.143(f) and reporting requirements of this Section for the sum of the Estimated Cost of the Work and the amounts, if any, of other federal, state, or tribal environmental obligations financially assured through the use of a financial test or guarantee, accompanied by a standby funding commitment, which obligates Settling Work Party to pay funds to or at the direction of EPA, up to the amount financially assured through the use of this demonstration in the event of a Work Takeover; or

f.      A guarantee to fund or perform the Work executed in favor of EPA by one of the following: (1) a direct or indirect parent company of a Settling Work Party, or (2) a company that has a "substantial business relationship" (as defined in 40 C.F.R. § 264.141(h)) with a Settling Work Party; provided, however, that any company providing such a guarantee must demonstrate to EPA's satisfaction that it meets the relevant financial test criteria of 40 C.F.R. § 264.143(f) and reporting requirements of this Section for the sum of the Estimated Cost

of the Work and the amounts, if any, of other federal, state, or tribal environmental obligations financially assured through the use of a financial test or guarantee.

28.     The Settling Work Parties have selected the following mechanisms as an initial financial assurance:

| Settling Work Party | Financial Assurance Mechanism |
| --- | --- |
| Bridgestone Americas Tire Operations, LLC | Letter of Credit with Standby Trust for Assurance |
| Cargill, Inc. | Surety Bond for Assurance |
| Flowserve Corporation | Surety Bond for Assurance |
| Kelsey-Hayes Company | Letter of Credit for Assurance |
| NCR Corporation | Performance Bond for Financial Assurance |
| Northrop Grumman Systems Corporation | Surety Bond for Assurance |
| Waste Management of Ohio, Inc. | Surety Bond for Assurance |

Within 30 days after the Effective Date, each of the Settling Work Parties shall obtain EPA's approval of the form of financial assurance set forth in the table above. Within 30 days of EPA's final approval, the Settling Work Parties shall secure all executed and/or otherwise finalized mechanisms or other documents consistent with the EPA-approved forms of financial assurance and shall submit such mechanisms and documents to the EPA Regional Financial Management Officer, to the United States, and to EPA as specified in Section XXI (Notices and Submissions).

29.     If Settling Work Parties provide financial assurance by means of a demonstration or guarantee under Paragraphs 27.e or 27.f, the affected Settling Work Parties shall also comply and shall ensure that their guarantors comply with the other relevant criteria and requirements of 40 C.F.R. § 264.143(f) and this Section, including, but not limited to: (a) the initial submission to EPA of required documents from the affected entity's chief financial officer and independent certified public accountant no later than 30 days after the Effective Date; (b) the annual resubmission of such documents within 90 days after the close of each such entity's fiscal year; and (c) the notification of EPA no later than 30 days, in accordance with Paragraph 30, after any

such entity determines that it no longer satisfies the relevant financial test criteria and requirements set forth at 40 C.F.R. § 264.143(f)(1). Settling Work Parties agree that EPA may also, based on a belief that an affected entity may no longer meet the financial test requirements of Paragraphs 27.e or 27.f, require reports of financial condition at any time from such entity in addition to those specified in this Paragraph. For purposes of this Section, references in 40 C.F.R. Part 264, Subpart H, to: (1) the terms "current closure cost estimate," "current post-closure cost estimate," and "current plugging and abandonment cost estimate" include the Estimated Cost of the Work; (2) the phrase "the sum of the current closure and post-closure cost estimates and the current plugging and abandonment cost estimates" includes the sum of all environmental obligations (including obligations under CERCLA, RCRA, and any other federal, state, or tribal environmental obligation) guaranteed by such company or for which such company is otherwise financially obligated in addition to the Estimated Cost of the Work under this CD; (3) the terms "owner" and "operator" include each Settling Work Party making a demonstration or obtaining a guarantee under Paragraphs 27.e or 27.f; and (4) the terms "facility" and "hazardous waste management facility" include the Site.

30. Settling Work Parties shall diligently monitor the adequacy of the financial assurance. If any Settling Work Party becomes aware of any information indicating that the financial assurance provided under this Section is inadequate or otherwise no longer satisfies the requirements of this Section, such Settling Work Party shall notify EPA of such information within 7 days. If EPA determines that the financial assurance provided under this Section is inadequate or otherwise no longer satisfies the requirements of this Section, EPA will notify the affected Settling Work Party of such determination. A Settling Work Party shall, within 30 days after notifying EPA or receiving notice from EPA under this Paragraph, secure and submit to

36

EPA for approval a proposal for a revised or alternative financial assurance mechanism that satisfies the requirements of this Section. EPA may extend this deadline for such time as is reasonably necessary for the affected Settling Work Party in the exercise of due diligence, to secure and submit to EPA a proposal for a revised or alternative financial assurance mechanism, not to exceed 60 days. Settling Work Parties shall follow the procedures of Paragraph 32 (Modification of Financial Assurance) in seeking approval of, and submitting documentation for, the revised or alternative financial assurance mechanism. Settling Work Parties' inability to secure and submit to EPA financial assurance in accordance with this Section shall in no way excuse performance of any other requirements of this CD, including, without limitation, the obligation of Settling Work Parties to complete the Work in accordance with the terms of this CD.

31. <u>Access to Financial Assurance</u>

a. If EPA issues a notice of implementation of a Work Takeover under Paragraph 76.b, then, in accordance with any applicable financial assurance mechanism, EPA is entitled to (1) the performance of the Work and/or (2) require that any funds be paid in accordance with Paragraph 31.d.

b. If EPA is notified by the issuer of a financial assurance mechanism that it intends to cancel such mechanism, and the Settling Work Parties fail to provide an alternative financial assurance mechanism in accordance with this Section at least 30 days prior to the cancellation date, the funds guaranteed under such mechanism must be paid prior to cancellation in accordance with Paragraph 31.d.

c. If, upon issuance of a notice of implementation of a Work Takeover under Paragraph 76.b, either (1) EPA is unable for any reason to promptly secure the resources

guaranteed under any applicable financial assurance mechanism, whether in cash or in kind, to continue and complete the Work, or (2) the financial assurance is provided under Paragraph 27.e or 27.f, then EPA may demand an amount, as determined by EPA, sufficient to cover the cost of the remaining Work to be performed. Settling Work Parties shall, within 14 days of such demand, pay the amount demanded as directed by EPA.

   d. Any amounts required to be paid under this Paragraph 31 shall be, as directed by EPA: (i) paid to EPA in order to facilitate the completion of the Work by EPA or by another person, or (ii) deposited into an interest-bearing account, established at a duly chartered bank or trust company that is insured by the FDIC, in order to facilitate the completion of the Work by another person. If payment is made to EPA, EPA may deposit the payment into the EPA Hazardous Substance Superfund or into the Valleycrest Landfill Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

   e. All EPA Work Takeover costs not paid under this Paragraph 31 must be reimbursed as Future Response Costs under Section X (Payments for Response Costs).

   32. <u>Modification of Amount, Form, or Terms of Financial Assurance</u>. Settling Work Parties may submit, on any anniversary of the Effective Date or at any other time agreed to by the Parties, a request to reduce the amount, or change the form or terms, of the financial assurance mechanism. Any such request must be submitted to EPA in accordance with Paragraph 28, and must include an estimate of the cost of the remaining Work, an explanation of the bases for the cost calculation, and a description of the proposed changes, if any, to the form or terms of the financial assurance. EPA will notify Settling Work Parties of its decision to

accept or reject a requested reduction or change pursuant to this Paragraph.  Settling Work

Parties may reduce the amount of the financial assurance mechanism only in accordance with:

(a) EPA's approval; or (b) if there is a dispute, the agreement, final administrative decision, or

final judicial decision resolving such dispute under Section XIV (Dispute Resolution).  Any

decision made by EPA on a request submitted under this Paragraph to change the form or terms

of a financial assurance mechanism shall be made in EPA's sole and unreviewable discretion,

and such decision shall not be subject to challenge by Settling Work Parties pursuant to the

dispute resolution provisions of this CD or in any other forum.  Within 30 days after receipt of

EPA's approval of, or the agreement or decision resolving a dispute relating to, the requested

modifications pursuant to this Paragraph, Settling Work Parties shall submit to EPA

documentation of the reduced, revised, or alternative financial assurance mechanism in

accordance with Paragraph 28.

       33.      <u>Release, Cancellation, or Discontinuation of Financial Assurance</u>.  Settling Work

Parties may release, cancel, or discontinue any financial assurance provided under this Section

only: (a) if EPA issues a Certification of Work Completion under Paragraph 4.9 (Certification of

Work Completion) of the SOW; (b) in accordance with EPA's approval of such release,

cancellation, or discontinuation; or (c) if there is a dispute regarding the release, cancellation or

discontinuance of any financial assurance, in accordance with the agreement, final administrative

decision, or final judicial decision resolving such dispute under Section XIV (Dispute

Resolution).

# X.    PAYMENTS FOR RESPONSE COSTS

       34.      <u>Past Response Costs</u>.  Settling Work Parties shall not be required to pay Past

Response Costs.

35.     Payment by Settling Work Parties for Future Response Costs.  Settling Work

Parties shall pay to EPA all Future Response Costs not inconsistent with the NCP, but Settling

Work Parties shall not pay Interim Response Costs or Future Oversight Costs, except to the

extent that such costs, together with the Net Unreimbursed Past Response Costs (collectively

"Orphan Share Costs") exceed $8.37 million.

     a.     On a periodic basis, EPA will send Settling Work Parties a bill requiring

payment that includes an itemized costs summary, which includes direct and indirect costs

incurred by EPA, its contractors, subcontractors, and DOJ.  The bill shall not include any Future

Oversight Costs, unless Orphan Share Costs exceed $8.37 million.  Settling Work Parties shall

make all payments within 30 days after Settling Work Parties' receipt of each bill requiring

payment, except as otherwise provided in Paragraph 37, in accordance with Paragraph 36

(Payment Instructions for Settling Work Parties).

     b.     *Deposit of Future Response Costs Payments*:  The total amount to be paid

by Settling Work Parties pursuant to Paragraph 35.a shall be deposited by EPA in the

Valleycrest Landfill Special Account to be retained and used to conduct or finance response

actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous

Substance Superfund, provided, however, that EPA may deposit a Future Response Costs

payment directly into the EPA Hazardous Substance Superfund if, at the time the payment is

received, EPA estimates that the Valleycrest Landfill Special Account balance is sufficient to

address currently anticipated future response actions to be conducted or financed by EPA at or

in connection with the Site.  Any decision by EPA to deposit a Future Response Costs payment

directly into the EPA Hazardous Substance Superfund for this reason shall not be subject to

challenge by Settling Work Parties pursuant to the dispute resolution provisions of this CD or in any other forum.

36. <u>Payment Instructions for Settling Work Parties</u>. For all payments subject to this Paragraph 36, Settling Work Parties shall make such payment by Fedwire EFT, referencing the Site/Spill ID and DJ numbers. The Fedwire EFT payment must be sent as follows:

> Federal Reserve Bank of New York
> ABA = 021030004
> Account = 68010727
> SWIFT address = FRNYUS33
> 33 Liberty Street
> New York, NY 10045
> Field Tag 4200 of the Fedwire message should read
> "D 68010727 Environmental Protection Agency"

For all payments made under this Paragraph 36, Settling Work Parties must include references to the Site/Spill ID and DJ numbers. At the time of any payment required to be made in accordance with Paragraph 35.a, Settling Work Parties shall send notices that payment has been made to the United States, EPA, and the EPA Cincinnati Finance Center, all in accordance with Paragraph 99. All notices must include references to the Site/Spill ID and DJ numbers.

37. <u>Contesting Response Costs</u>. Settling Work Parties may submit a Notice of Dispute, initiating the procedures of Section XIV (Dispute Resolution), regarding any Future Response Costs billed under Paragraph 35 (Payments by Settling Work Parties for Future Response Costs) if they determine that EPA has made a mathematical error or included a cost item that is not within the definition of Future Response Costs, or if they believe EPA incurred excess costs as a direct result of an EPA action that was inconsistent with a specific provision or provisions of the NCP. Such Notice of Dispute shall be submitted in writing within 30 days after receipt of the bill and must be sent to the United States pursuant to Section XXI (Notices and

Submissions). Such Notice of Dispute shall specifically identify the contested costs and the basis for objection. If Settling Work Parties submit a Notice of Dispute, Settling Work Parties shall pay all uncontested costs to the United States within 30 days after Settling Work Parties' receipt of the bill requiring payment. Simultaneously, Settling Work Parties shall establish, in a duly chartered bank or trust company, an interest-bearing escrow account that is insured by the Federal Deposit Insurance Corporation (FDIC), and remit to that escrow account funds equivalent to the amount of the contested costs. Settling Work Parties shall send to the United States, as provided in Section XXI (Notices and Submissions), a copy of the transmittal letter and check paying the uncontested costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account. If the United States prevails in the dispute, Settling Work Parties shall pay the sums due (with accrued interest) to the United States within 14 days after the resolution of the dispute. If Settling Work Parties prevail concerning any aspect of the contested costs, Settling Work Parties shall pay that portion of the costs (plus associated accrued interest) for which they did not prevail to the United States within 14 days after the resolution of the dispute. Settling Work Parties shall be disbursed any balance of the escrow account. All payments to the United States under this Paragraph shall be made in accordance with Paragraph 36 (Payment Instructions for Settling Work Parties). The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIV (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding Settling Work Parties' obligation to reimburse the United States for its Future Response Costs.

# XI. DISBURSEMENT OF SPECIAL ACCOUNT FUNDS

38. <u>Valleycrest Landfill Disbursement Special Account and Agreement to Disburse Funds to Settling Work Parties</u>. Within 30 days after the Effective Date, EPA shall establish the Valleycrest Landfill Disbursement Special Account and shall transfer a total of $1,710,242 from the Valleycrest Landfill Special Account to the Valleycrest Landfill Disbursement Special Account, leaving a balance of approximately $257,000 within the Valleycrest Landfill Special Account. Subject to the terms and conditions set forth in this Section, EPA agrees to make the funds in the Valleycrest Landfill Disbursement Special Account, including Interest Earned on the funds in such account, available for disbursement to Settling Work Parties as partial reimbursement for performance of the Work. EPA shall disburse funds from the Valleycrest Landfill Disbursement Special Account to Settling Work Parties in accordance with the procedures and milestones for phased disbursement set forth in this Section.

39. <u>Timing, Amount, and Method of Disbursing Funds From the Valleycrest Landfill Disbursement Special Account</u>. Within 30 days after EPA's receipt of a Cost Summary and Certification, as defined by Paragraph 40.b, or if EPA has requested additional information under such paragraph or a revised Cost Summary and Certification under Paragraph 40.c, within 30 days after receipt of the additional information or revised Cost Summary and Certification, and subject to the conditions set forth in this Section, EPA shall disburse the funds from the Valleycrest Landfill Disbursement Special Account at the completion of the following

milestones, and in the amounts set forth below:

| Milestone | Disbursement of Funds |
|---|---|
| EPA approval of RA Work Plan | $500,000 from the Valleycrest Landfill Disbursement Special Account |
| Settling Work Parties completion of all Work in the EPA-approved RAWP | $800,000 from the Valleycrest Landfill Disbursement Special Account |
| EPA certification of RA Completion | The remaining funds from the Valleycrest Landfill Disbursement Special Account including any remaining Interest Earned |

EPA shall disburse the funds from the Valleycrest Landfill Disbursement Special Account to the

Settling Work Parties by electronic transfer to the following account:

        Name on Account:     Dinsmore & Shohl
        Bank Name:           Fifth Third Bank
        Account Number:      73065171
        Routing Number:      04000314

       40.       Requests for Disbursement of Special Account Funds.

           a.       Within 60 days after issuance of EPA's written confirmation that a

milestone of the Work, as defined in Paragraph 39 (Timing, Amount, and Method of Disbursing

Funds), has been satisfactorily completed, the Settling Work Parties shall submit to EPA a Cost

Summary and Certification, as defined in Paragraph 40.b, covering the Work performed up to

the date of completion of that milestone.  The Settling Work Parties shall not include in any

submission costs included in a previous Cost Summary and Certification following completion

of an earlier milestone of the Work if those costs have been previously sought or reimbursed

pursuant to Paragraphs 39.

           b.       Each Cost Summary and Certification shall include a complete and

accurate written cost summary and certification of the necessary costs incurred and paid by

Settling Work Parties for the Work covered by the particular submission, excluding costs not

44

eligible for disbursement under Paragraph 41(Costs Excluded from Disbursement). Each Cost Summary and Certification shall contain the following statement signed by a Certified Public Accountant of the Settling Work Parties:

> To the best of my knowledge, after thorough investigation and review of Settling Work Parties' documentation of costs incurred and paid for Work performed pursuant to this CD [**insert, as appropriate**: "up to the date of completion of milestone 1," "between the date of completion of milestone 1 and the date of completion of milestone 2," or "between the date of completion of milestone 2 and the date of completion of the milestone 3,"] I certify that the information contained in or accompanying this submission is true, accurate, and complete. I am aware that there are significant penalties for knowingly submitting false information, including the possibility of fine and imprisonment.

The Certified Public Accountant shall also provide EPA a list of the documents that he or she reviewed in support of the Cost Summary and Certification. Upon request by EPA, the Settling Work Parties shall submit to EPA any additional information that EPA deems necessary for its review and approval of a Cost Summary and Certification.

        c. If EPA finds that a Cost Summary and Certification includes a mathematical error, costs excluded under Paragraph 41 (Costs Excluded from Disbursement), costs that are inadequately documented, or costs submitted in a prior Cost Summary and Certification, it will notify the Settling Work Parties and provide them an opportunity to cure the deficiency by submitting a revised Cost Summary and Certification. If Settling Work Parties fail to cure the deficiency within 45 days after being notified of, and given the opportunity to cure, the deficiency, EPA will recalculate Settling Work Parties' costs eligible for disbursement for that submission and disburse the corrected amount to the Settling Work Parties in accordance with the procedures in Paragraph 39 (Timing, Amount, and Method of Disbursing Funds). The Settling Work Parties may dispute EPA's recalculation under this Paragraph pursuant to Section XIV (Dispute Resolution). In no event shall Settling Work Parties be

disbursed funds from the Valleycrest Landfill Disbursement Special Account in excess of amounts properly documented in a Cost Summary and Certification accepted or modified by EPA.

41.     Costs Excluded from Disbursement.  The following costs are excluded from, and shall not be sought by Settling Work Parties for, disbursement from the Valleycrest Landfill Disbursement Special Account: (a) response costs paid pursuant to Section X (Payments for Response Costs); (b) any other payments made by Settling Work Parties to the United States pursuant to this Consent Decree including, but not limited to, any Interest or stipulated penalties paid pursuant to Sections X (Payments for Response Costs) or XV (Stipulated Penalties); (c) attorneys' fees and costs, except for reasonable attorneys' fees and costs necessarily related to obtaining access or establishing institutional controls, as required by Section VIII (Property Requirements); (d) costs of any response activities Settling Work Parties perform that are not required under, or approved by EPA pursuant to, this Consent Decree; (e) costs related to Settling Work Parties' litigation, settlement, development of potential contribution claims, or identification of defendants; (f) internal costs of Settling Work Parties, including but not limited to, salaries, travel, or in-kind services, except for those costs that represent the work of employees of Settling Work Parties directly performing the Work; (g) any costs incurred by Settling Work Parties prior to the Effective Date, or (h) any costs incurred by Settling Work Parties pursuant to Section XIV (Dispute Resolution).

42.     Termination of Disbursements from the Special Account.  EPA's obligation to disburse funds from the Valleycrest Landfill Disbursement Special Account under this Consent Decree shall terminate upon EPA's determination that Settling Work Parties: (a) have knowingly submitted a materially false or misleading Cost Summary and Certification; (b) have submitted a

materially inaccurate or incomplete Cost Summary and Certification, and have failed to correct

the materially inaccurate or incomplete Cost Summary and Certification within 45 days after

being notified of, and given the opportunity to cure, the deficiency; or (c) failed to submit a Cost

Summary and Certification as required by Paragraph 40 (Requests for Disbursement of Special

Account Funds) within 30 days (or such longer period as EPA agrees) after being notified that

EPA intends to terminate its obligation to make disbursements pursuant to this Section because

of Settling Work Parties' failure to submit the Cost Summary and Certification as required by

Paragraph 40.  EPA's obligation to disburse funds from the Valleycrest Landfill Disbursement

Special Account shall also terminate upon EPA's assumption of performance of any portion of

the Work pursuant to Paragraph 76 (Work Takeover), when such assumption of performance of

the Work is not challenged by Settling Work Parties or, if challenged, is upheld under

Section XIV (Dispute Resolution).  Settling Work Parties may dispute EPA's termination of

special account disbursements under Section XIV.

      43.   <u>Recapture of Special Account Disbursements</u>.  Upon termination of

disbursements from the Valleycrest Landfill Disbursement Special Account under Paragraph 42

(Termination of Disbursements from the Special Account), if EPA has previously disbursed

funds from the Valleycrest Landfill Disbursement Special Account for activities specifically

related to the reason for termination ( e.g., discovery of a materially false or misleading

submission after disbursement of funds based on that submission), EPA shall submit a bill to

Settling Work Parties for those amounts already disbursed from the Valleycrest Landfill

Disbursement Special Account specifically related to the reason for termination, plus Interest on

that amount covering the period from the date of disbursement of the funds by EPA to the date of

repayment of the funds by Settling Work Parties.  Within 60 days after receipt of EPA's bill,

Settling Work Parties shall reimburse the EPA Hazardous Substance Superfund for the total amount billed. Payment shall be made in accordance with Paragraph 36 (Payment Instructions for Settling Work Parties). Upon receipt of payment, EPA may deposit all or any portion thereof in the Valleycrest Landfill Special Account, the Valleycrest Landfill Disbursement Special Account, or the EPA Hazardous Substance Superfund. The determination of where to deposit or how to use the funds shall not be subject to challenge by Settling Work Parties pursuant to the dispute resolution provisions of this CD or in any other forum. Settling Work Parties may dispute EPA's determination as to recapture of funds pursuant to Section XIV (Dispute Resolution).

44. <u>Balance of Special Account Funds</u>. After EPA issues its written Certification of Remedial Action Completion pursuant to this CD, and after EPA completes all disbursement to Settling Work Parties in accordance with this Section, if any funds remain in the Valleycrest Landfill Disbursement Special Account, EPA may transfer such funds to the Valleycrest Landfill Special Account or to the EPA Hazardous Substance Superfund. Any transfer of funds to the Valleycrest Landfill Special Account or the EPA Hazardous Substance Superfund shall not be subject to challenge by Settling Work Parties pursuant to the dispute resolution provisions of this CD or in any other forum.

## XII.  INDEMNIFICATION AND INSURANCE

45. Settling Work Parties' Indemnification of the United States.

a. The United States does not assume any liability by entering into this CD or by virtue of any designation of Settling Work Parties as EPA's authorized representatives under Section 104(e) of CERCLA, 42 U.S.C. § 9604(e). Settling Work Parties shall indemnify, save, and hold harmless the United States and its officials, agents, employees, contractors, subcontractors, and representatives for or from any and all claims or causes of action arising

from, or on account of, negligent or other wrongful acts or omissions of Settling Work Parties, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on Settling Work Parties' behalf or under their control, in carrying out activities pursuant to this CD, including, but not limited to, any claims arising from any designation of Settling Work Parties as EPA's authorized representatives under Section 104(e) of CERCLA.  Further, Settling Work Parties agree to pay the United States all costs it incurs including, but not limited to, attorneys' fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States based on negligent or other wrongful acts or omissions of Settling Work Parties, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this CD.  The United States shall not be held out as a party to any contract entered into by or on behalf of Settling Work Parties in carrying out activities pursuant to this CD.  Neither Settling Work Parties nor any such contractor shall be considered an agent of the United States.

b.      The United States shall give Settling Work Parties notice of any claim for which the United States plans to seek indemnification pursuant to this Paragraph 45, and shall consult with Settling Work Parties prior to settling such claim.

46.      Settling Work Parties covenant not to sue and agree not to assert any claims or causes of action against the United States for damages or reimbursement or for set-off of any payments made or to be made to the United States, arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Work Parties and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.  In addition, Settling Work Parties shall indemnify, save and hold harmless the United States with respect to any and all claims for damages or reimbursement

49

arising from or on account of any contract, agreement, or arrangement between any one or more

of Settling Work Parties and any person for performance of Work on or relating to the Site,

including, but not limited to, claims on account of construction delays.

47.     Insurance.  No later than 15 days before commencing any on-site Work, Settling

Work Parties shall secure, and shall maintain until the first anniversary after issuance of EPA's

Certification of RA Completion pursuant to Paragraph 4.8 (Certification of RA Completion) of

the SOW, commercial general liability insurance with limits of $3 million, for any one

occurrence, and automobile liability insurance with limits of $3 million, combined single limit,

naming the United States as an additional insured with respect to all liability arising out of the

activities performed by or on behalf of Settling Work Parties pursuant to this CD.  In addition,

for the duration of this CD, Settling Work Parties shall satisfy, or shall ensure, that their

contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision

of worker's compensation insurance for all persons performing the Work on behalf of Settling

Work Parties in furtherance of this CD.  Prior to commencement of the Work, Settling Work

Parties shall provide to EPA certificates of such insurance and a copy of each insurance policy.

The Settling Work Parties shall resubmit such certificates and copies of policies each year on the

anniversary of the Effective Date.  If Settling Work Parties demonstrate by evidence satisfactory

to EPA that any contractor or subcontractor maintains insurance equivalent to that described

above, or insurance covering the same risks but in a lesser amount, then, with respect to that

contractor or subcontractor, Settling Work Parties need provide only that portion of the insurance

described above that is not maintained by the contractor or subcontractor.

# XIII.  FORCE MAJEURE

48.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Settling Work Parties, of any entity controlled by Settling Work Parties, or of Settling Work Parties' contractors that delays or prevents the performance of any obligation under this Consent Decree despite Settling Work Parties' best efforts to fulfill the obligation.  The requirement that Settling Work Parties exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (a) as it is occurring and (b) following the potential force majeure such that the delay and any adverse effects of the delay are minimized to the greatest extent possible.  "Force majeure" does not include financial inability to complete the Work or a failure to achieve the Performance Standards.

49.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree for which Settling Work Parties intend or may intend to assert a claim of force majeure, Settling Work Parties shall notify EPA's Project Coordinator orally or, in his or her absence, EPA's Alternate Project Coordinator or, in the event both of EPA's designated representatives are unavailable, the Director of the Superfund Division, EPA Region 5, within 7 days of when Settling Work Parties first knew that the event might cause a delay.  Within 20 days thereafter, Settling Work Parties shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Settling Work Parties' rationale for attributing such delay to a force majeure; and a statement as to whether, in the opinion of Settling Work Parties, such event may cause or contribute to an

51

endangerment to public health or welfare, or the environment.  Settling Work Parties shall

include with any notice all available documentation supporting their claim that the delay was

attributable to a force majeure.  Settling Work Parties shall be deemed to know of any

circumstance of which Settling Work Parties, any entity controlled by Settling Work Parties, or

Settling Work Parties' contractors or subcontractors knew or should have known.  Failure to

comply with the above requirements regarding an event shall preclude Settling Work Parties

from asserting any claim of force majeure regarding that event, provided, however, that if EPA,

despite the late or incomplete notice, is able to assess to its satisfaction whether the event is a

force majeure under Paragraph 48 and whether Settling Work Parties have exercised their best

efforts under Paragraph 48, EPA may, in its unreviewable discretion, excuse in writing Settling

Work Parties' failure to submit timely or complete notices under this Paragraph.

50.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure,

the time for performance of the obligations under this Consent Decree that are affected by the

force majeure will be extended by EPA for such time as is necessary to complete those

obligations.  An extension of the time for performance of the obligations affected by the force

majeure shall not, of itself, extend the time for performance of any other obligation.  If EPA does

not agree that the delay or anticipated delay has been or will be caused by a force majeure, EPA

will notify Settling Work Parties in writing of its decision.  If EPA agrees that the delay is

attributable to a force majeure, EPA will notify Settling Work Parties in writing of the length of

the extension, if any, for performance of the obligations affected by the force majeure.

51.     If Settling Work Parties elect to invoke the dispute resolution procedures set forth

in Section XIV (Dispute Resolution) regarding EPA's position, they shall do so no later than

15 days after receipt of EPA's notice.  In any such proceeding, Settling Work Parties shall have

the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Work Parties complied with the requirements of Paragraphs 48 and 49.  If Settling Work Parties carry this burden, the delay at issue shall be deemed not to be a violation by Settling Work Parties of the affected obligation of this Consent Decree identified to EPA and the Court.

52.     The failure by EPA to timely complete any obligation under the CD or under the SOW is not a violation of the CD, provided, however, that if such failure prevents Settling Work Parties from meeting one or more deadlines in the SOW, Settling Work Parties may seek relief under this Section.

## XIV.     DISPUTE RESOLUTION

53.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes regarding this Consent Decree.  However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of Settling Work Parties that have not been disputed in accordance with this Section.

54.     A dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.  Any dispute regarding this CD shall in the first instance be the subject of informal negotiations between the parties to the dispute.  The period for informal negotiations shall not exceed 30 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute.

55.    Statements of Position.

a.    In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within 30 days after the conclusion of the informal negotiation period, Settling Work Parties invoke the formal dispute resolution procedures of this Section by serving on the United States a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by Settling Work Parties. The Statement of Position shall specify Settling Work Parties' position as to whether formal dispute resolution should proceed under Paragraphs 56 (Record Review) or 57.

b.    Within 30 days after receipt of Settling Work Parties' Statement of Position, EPA will serve on Settling Work Parties its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA. EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 56 (Record Review) or Paragraph 57. Within 21 days after receipt of EPA's Statement of Position, Settling Work Parties may submit a Reply.

c.    If there is disagreement between EPA and Settling Work Parties as to whether dispute resolution should proceed under Paragraphs 56 (Record Review) or 57, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable. However, if Settling Work Parties ultimately appeal to the Court to resolve the dispute, the Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 56 and 57.

56.    Record Review.  Formal dispute resolution for disputes pertaining to the selection

or adequacy of any response action and all other disputes that are accorded review on the

administrative record under applicable principles of administrative law shall be conducted

pursuant to the procedures set forth in this Paragraph.  For purposes of this Paragraph, the

adequacy of any response action includes, without limitation, the adequacy or appropriateness of

plans, procedures to implement plans, or any other items requiring approval by EPA under this

Consent Decree, and the adequacy of the performance of response actions taken pursuant to this

Consent Decree.  Nothing in this Consent Decree shall be construed to allow any dispute by

Settling Work Parties regarding the validity of the ROD's provisions.

a.    An administrative record of the dispute shall be maintained by EPA and

shall contain all statements of position, including supporting documentation, submitted pursuant

to this Section.  Where appropriate, EPA may allow submission of supplemental statements of

position by the parties to the dispute.

b.    The Director of the Superfund Division, EPA Region 5, will issue a final

administrative decision resolving the dispute based on the administrative record described in

Paragraph 56.a.  This decision shall be binding upon Settling Work Parties, subject only to the

right to seek judicial review pursuant to Paragraphs 56.c and 56.d.

c.    Any administrative decision made by EPA pursuant to Paragraph 56.b

shall be reviewable by this Court, provided that a motion for judicial review of the decision is

filed by Settling Work Parties with the Court and served on all Parties within twenty days after

receipt of EPA's decision in writing.  The motion shall include a description of the matter in

dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if

any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree. The United States may file a response to Settling Work Parties' motion.

        d.      In proceedings on any dispute governed by this Paragraph, Settling Work Parties shall have the burden of demonstrating that the decision of the Superfund Division Director is arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 56.a.

57.      Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph.

        a.      The Director of the Superfund Division, EPA Region 5, will issue a final decision resolving the dispute based on the statements of position and reply, if any, served under Paragraph 55. The Superfund Division Director's decision shall be binding on Settling Work Parties unless, within 10 days after receipt of the decision, Settling Work Parties file with the Court and serve on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the CD. The United States may file a response to Settling Work Parties' motion.

        b.      Notwithstanding Paragraph M (CERCLA Section 113(j) Record Review of ROD and Work) of Section I (Background), judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

58.      The invocation of formal dispute resolution procedures under this Section does not extend, postpone, or affect in any way any obligation of Settling Work Parties under this CD, except as provided in Paragraph 37 (Contesting Response Costs), as agreed by EPA, or as

determined by the Court. Stipulated penalties with respect to the disputed matter shall continue to accrue, but payment shall be stayed pending resolution of the dispute, as provided in Paragraph 66. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this CD. In the event that Settling Work Parties do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XV (Stipulated Penalties).

# XV.    STIPULATED PENALTIES

59.    Settling Work Parties shall be liable for stipulated penalties in the amounts set forth in Paragraphs 60 and 61 to the United States for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XIII (Force Majeure). "Compliance" by Settling Work Parties shall include completion of all activities and obligations, including payments, required under this Consent Decree, or any deliverable approved under this Consent Decree, in accordance with all applicable requirements of law, this Consent Decree, the SOW, and any deliverables approved under this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

60.    <u>Stipulated Penalty Amounts - Work (Including Payments and Excluding Deliverables)</u>.

a.    The following stipulated penalties shall accrue per violation per day for any noncompliance with requirements identified in Paragraph 60.b:

| Period of Noncompliance | Penalty Per Violation Per Day |
| --- | --- |
| 1st through 14th day | $750 |
| 15th through 30th day | $1,500 |
| 31st day and beyond | $3,000 |

b.      Compliance Milestones.

(1)      Award RA contract(s);

(2)      Pre-construction inspection and meeting;

(3)      Initiate construction of RA;

(4)      Completion of Cap Component, referred to in the SOW as "consolidation and covering of the Site," in accordance with schedule set forth in the approved RA Work Plan;

(5)      Completion of construction of monitoring and extraction wells in accordance with the schedule set forth in the approved RA Work Plan;

(6)      Conduct groundwater and leachate sampling in accordance with the schedule set forth in the approved RA Work Plan;

(7)      Conduct final inspection, for the Soil Remedy Component and for the Work, in accordance with the schedule set forth in the SOW;

(8)      Payment For Response Costs pursuant to Paragraph 35 of Section X (Payment for Response Costs);

(9)      Establishment and maintenance of financial assurance in compliance with the timelines and other substantive and procedural requirements of Section IX (Financial Assurance); or

(10)     Perform activities to complete the Work in accordance with EPA's notice issued pursuant to Paragraph 4.4d of the SOW, not including those matters identified in Paragraph 76 (Work Takeover) below.

61.     Stipulated Penalty Amounts - Deliverables.

        a.      Material Defects.  If an initially submitted or resubmitted deliverable, as the term is used in Section 6 (Deliverables) and elsewhere in the SOW, contains a material defect, and the deliverable is disapproved or modified by EPA under Paragraphs 6.6a or 6.6b of the SOW due to such material defect, then the material defect shall constitute a lack of compliance for purposes of Paragraph 59.  The provisions of Section XIV (Dispute Resolution) and Section XV (Stipulated Penalties) shall govern the accrual and payment of any stipulated penalties regarding Settling Work Parties' submissions under this CD.

        b.      The following stipulated penalties shall accrue per violation per day for failure to submit timely or adequate deliverables pursuant to the CD:

| Period of Noncompliance | Penalty Per Violation Per Day |
| --- | --- |
| 1st through 14th day | $550 |
| 15th through 30th day | $1,250 |
| 31st day and beyond | $2,000 |

62.     In the event that EPA assumes performance of a portion or all of the Work pursuant to Paragraph 76 (Work Takeover), Settling Work Parties shall be liable for a stipulated penalty in the amount of $3 million.  Stipulated penalties under this Paragraph are in addition to the remedies available under Paragraphs 31 (Access to Financial Assurance) and 76 (Work Takeover).

63.     All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity.  However, stipulated penalties shall not accrue:  (a) with respect to a deficient submission under Paragraph 6.6 (Approval of Deliverables) of the SOW, during the period, if any, beginning on the 31st day after EPA's

receipt of such submission until the date that EPA notifies Settling Work Parties of any deficiency; (b) with respect to a decision by the Director of the Superfund Division, EPA Region 5, under Paragraphs 56.b or 57.a of Section XIV (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that Settling Work Parties' reply to EPA's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (c) with respect to judicial review by this Court of any dispute under Section XIV (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute. Nothing in this Consent Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

64.     Following EPA's determination that Settling Work Parties have failed to comply with a requirement of this Consent Decree, EPA shall give Settling Work Parties written notification of the same and describe the noncompliance. EPA shall send Settling Work Parties a written demand for the payment of the penalties.

65.     All penalties accruing under this Section shall be due and payable to the United States within 30 days after Settling Work Parties' receipt from EPA of a demand for payment of the penalties, unless Settling Work Parties invoke the Dispute Resolution procedures under Section XIV (Dispute Resolution) within the 30-day period. All payments to the United States under this Section shall indicate that the payment is for stipulated penalties and shall be made in accordance with Paragraph 36 (Payment Instructions for Settling Work Parties).

66.     Penalties shall continue to accrue as provided in Paragraph 63 during any dispute resolution period, but need not be paid until the following:

a.       If the dispute is resolved by agreement of EPA and the Settling Work Parties, or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owed shall be paid to EPA within 15 days after the agreement or the receipt of EPA's decision or order;

b.       If the dispute is appealed to this Court and the United States prevails in whole or in part, Settling Work Parties shall pay all accrued penalties determined by the Court to be owed to EPA within 60 days after receipt of the Court's decision or order, except as provided in Subparagraph 66.c;

c.       If the District Court's decision is appealed by any Party, Settling Work Parties shall pay all accrued penalties determined by the District Court to be owed to the United States into an interest-bearing escrow account, established at a duly chartered bank or trust company that is insured by the FDIC, within 60 days after receipt of the Court's decision or order, or as otherwise determined by the Court.  Penalties shall be paid into this account as they continue to accrue, at least every 60 days, or as otherwise determined by the Court.  Within 15 days after receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA or to Settling Work Parties to the extent that they prevail.

67.       If Settling Work Parties fail to pay stipulated penalties when due, Settling Work Parties shall pay Interest on the unpaid stipulated penalties as follows: (a) if Settling Work Parties have timely invoked dispute resolution such that the obligation to pay stipulated penalties has been stayed pending the outcome of dispute resolution, Interest shall accrue from the date stipulated penalties are due pursuant to Paragraph 66 until the date of payment; and (b) if Settling Work Parties fail to timely invoke dispute resolution, Interest shall accrue from the date of demand under Paragraph 65 until the date of payment.  If Settling Work Parties fail to pay

stipulated penalties and Interest when due, the United States may institute proceedings to collect the penalties and Interest.

68.     The payment of penalties and Interest, if any, shall not alter in any way Settling Work Parties' obligation to complete the performance of the Work required under this Consent Decree.

69.     Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek any other remedies or sanctions available by virtue of Settling Work Parties' violation of this Consent Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(*l*) of CERCLA, 42 U.S.C. § 9622(*l*), provided, however, that the United States shall not seek civil penalties pursuant to Section 122(*l*) of CERCLA for any violation for which a stipulated penalty is provided in this Consent Decree.

70.     Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

## XVI.     COVENANTS BY PLAINTIFF

71.     <u>Covenants for Settling Parties by United States</u>.   In consideration of the Remedial Action that will be performed and the payments that will be made by Settling Work Parties (on their behalf and on behalf of the Other Settling Parties) under this Consent Decree, and except as provided in Paragraphs 72 and 73 (United States' Pre- and Post-Certification Reservations), and Paragraph 75 (General Reservations of Rights), the United States covenants not to sue or to take administrative action against Settling Parties pursuant to Sections 106 and 107(a) of CERCLA relating to the Site.  Except with respect to future liability, these covenants shall take effect upon:

(i) the Effective Date of this Consent Decree, for the Settling Work Parties; and (ii) the later of the Effective Date or the date on which an Other Settling Party's Consent Decree signature page is filed with the Court in this action for such Other Settling Party. With respect to future liability, these covenants shall take effect upon Certification of RA Completion by EPA pursuant to Paragraph 4.8 (Certification of RA Completion) of the SOW. These covenants are conditioned upon the satisfactory performance by Settling Work Parties of their obligations under this CD. For Other Settling Parties that own Affected Properties, these covenants are further conditioned upon their satisfactory performance of the obligations set forth in Section VIII (Property Requirements). For Affordable Auto Parts, Inc. and Richard Young, these covenants are further conditioned upon the satisfactory performance by Linda Young of her obligations as an Owner SD under Section VIII (Property Requirements). These covenants extend only to Settling Parties and do not extend to any other person.

72. <u>United States' Pre-Certification Reservations</u>. Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, and/or to issue an administrative order, seeking to compel Settling Work Parties to perform further response actions relating to the Site and/or to pay the United States for additional costs of response if, (a) prior to Certification of RA Completion, (1) conditions at the Site, previously unknown to EPA, are discovered, or (2) information, previously unknown to EPA, is received, in whole or in part, and (b) EPA determines that these previously unknown conditions or information together with any other relevant information indicates that the RA is not protective of human health or the environment.

73.     United States' Post-Certification Reservations.  Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, and/or to issue an administrative order, seeking to compel Settling Work Parties to perform further response actions relating to the Site and/or to pay the United States for additional costs of response if, (a) subsequent to Certification of RA Completion, (1) conditions at the Site, previously unknown to EPA, are discovered, or (2) information, previously unknown to EPA, is received, in whole or in part, and (b) EPA determines that these previously unknown conditions or this information together with other relevant information indicate that the RA is not protective of human health or the environment.

74.     For purposes of Paragraph 72 (United States' Pre-Certification Reservations), the information and the conditions known to EPA will include only that information and those conditions known to EPA as of the date the ROD was signed and set forth in the ROD for the Site and the administrative record supporting the ROD.  For purposes of Paragraph 73 (United States' Post-Certification Reservations), the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date of Certification of Completion of the RA and set forth in the ROD, the administrative record supporting the ROD, the post-ROD administrative record, or in any information received by EPA pursuant to the requirements of this Consent Decree (including, but not limited to, any information provided by Settling Work Parties in support of any proposal to refine or modify the Remedial Action) prior to Certification of Completion of the RA.

75.     General Reservations of Rights.  The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Parties with respect to all matters not

64

expressly included within Plaintiff's covenants. Notwithstanding any other provision of this Consent Decree the United States reserves all rights against Settling Parties with respect to:

a.      liability for failure to meet a requirement of this Consent Decree;

b.      liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

c.      liability based on the ownership of the Site when such ownership commences after signature of this Consent Decree by Settling Work Parties;

d.      liability based on the operation of the Site when such operation commences after signature of this CD by Settling Work Parties and does not arise solely from Settling Work Parties' performance of the Work;

e.      liability based on transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA, after signature of this CD by Settling Work Parties;

f.      liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

g.      criminal liability;

h.      liability for violations of federal or state law that occur during or after implementation of the Work; and

i.      liability, prior to achievement of Performance Standards, for additional response actions that EPA determines are necessary to achieve and maintain Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, but

that cannot be required pursuant to Paragraph 13 (Modification of SOW or Related Deliverables).

76.    Work Takeover.

a.    In the event EPA determines that Settling Work Parties (1) have ceased implementation of any portion of the Work, (2) are seriously or repeatedly deficient or late in their performance of the Work, or (3) are implementing the Work in a manner that may cause an endangerment to human health or the environment, EPA may issue a written notice ("Work Takeover Notice") to Settling Work Parties.  Any Work Takeover Notice issued by EPA will specify the grounds upon which such notice was issued and will provide Settling Work Parties a period of thirty days within which to remedy the circumstances giving rise to EPA's issuance of such notice.

b.    If, after expiration of the thirty-day notice period specified in Paragraph 76.a, Settling Work Parties have not remedied to EPA's satisfaction the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, EPA may at any time thereafter assume the performance of all or any portion(s) of the Work as EPA deems necessary ("Work Takeover").  EPA will notify Settling Work Parties in writing (which writing may be electronic) if EPA determines that implementation of a Work Takeover is warranted under this Paragraph 76.b.  Funding of Work Takeover costs is addressed under Paragraph 31 (Access to Financial Assurance).

c.    Settling Work Parties may invoke the procedures set forth in Paragraph 56 (Record Review), to dispute EPA's implementation of a Work Takeover under Paragraph 76.b. However, notwithstanding Settling Work Parties' invocation of such dispute resolution procedures, and during the pendency of any such dispute, EPA may in its sole discretion

commence and continue a Work Takeover under Paragraph 76.b until the earlier of (1) the date

that Settling Work Parties remedy, to EPA's satisfaction, the circumstances giving rise to EPA's

issuance of the relevant Work Takeover Notice, or (2) the date that a final decision is rendered

in accordance with Paragraph 56 (Record Review) requiring EPA to terminate such Work

Takeover, or (3) the date of a temporary restraining order or preliminary injunction issued by a

Court requiring EPA to terminate such Work Takeover.

77.     Notwithstanding any other provision of this Consent Decree, the United States

retains all authority and reserves all rights to take any and all response actions authorized by law.

## XVII.   COVENANTS BY SETTLING PARTIES

78.     <u>Covenants by Settling Parties</u>.  Subject to the reservations in Paragraph 80,

Setting Parties covenant not to sue and agree not to assert any claims or causes of action against

the United States with respect to the Site and this Consent Decree, including, but not limited to:

a.     any direct or indirect claim for reimbursement from the EPA Hazardous

Substance Superfund through CERCLA Sections 106(b)(2), 107, 111, 112 or 113 (42 U.S.C.

§§ 9606(b)(2), 9607, 9611, 9612 or 9613), or any other provision of law;

b.     any claims under CERCLA Sections 107 or 113 (42 U.S.C. § 9607 or

9613), RCRA Section 7002(a) (42 U.S.C. § 6972(a)), or state law regarding the Site and this

Consent Decree;

c.     any claims arising out of response actions at or in connection with the Site,

including any claim under the United States Constitution, the Ohio Constitution, the Tucker Act,

28 U.S.C. §1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, or at common law; or

d.　　　any direct or indirect claim for disbursement from the Valleycrest Landfill Disbursement Account, except as provided in Section XI (Disbursement of Special Account Funds).

79.　　　Except as provided in Paragraph 82 (Waiver of Claims by Settling Parties) and Paragraph 88 (Res Judicata and Other Defenses), the covenants in this Section shall not apply if the United States brings a cause of action or issues an order pursuant to any of the reservations in Section XVI (Covenants by Plaintiff), other than in Paragraph 75.a (claims for failure to meet a requirement of the CD), 75.g (criminal liability) and 75.h (violations of federal/state law during or after implementation of the Work), but only to the extent that Settling Parties' claims arise from the same response action, response costs, or damages that the United States is seeking pursuant to the applicable reservation.

80.　　　The Settling Work Parties reserve, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, and brought pursuant to any statute other than CERCLA or RCRA and for which the waiver of sovereign immunity is found in a statute other than CERCLA or RCRA, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States, as that term is defined in 28 U.S.C. § 2671, while acting within the scope of his or her office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.  However, the foregoing shall not include any claim based on EPA's selection of response actions, or the oversight or approval of Settling Work Parties' deliverables or activities.

81.     Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

82.     <u>Waiver of Claims by Settling Parties</u>.

a.     Settling Parties agree not to assert any claims and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) that they may have:

(1)     <u>De Micromis Waiver</u>.  For all matters relating to the Site against any person where the person's liability to Setting Parties with respect to the Site is based solely on having arranged for disposal or treatment, or for transport for disposal or treatment, of hazardous substances at the Site, or having accepted for transport for disposal or treatment of hazardous substances at the Site, if all or part of the disposal, treatment, or transport occurred before April 1, 2001, and the total amount of material containing hazardous substances contributed by such person to the Site was less than 110 gallons of liquid materials or 200 pounds of solid materials;

(2)     <u>MSW Waiver</u>.  For all matters relating to the Site against any person where the person's liability to Settling Parties with respect to the Site is based solely on having arranged for disposal or treatment, or for transport for disposal or treatment, of MSW at the Site, if the volume of MSW disposed, treated, or transported by such person to the Site did not exceed 0.2% of the total volume of waste at the Site; and

(3)     <u>*De Minimis*/Ability to Pay Waiver</u>.  For response costs relating to the Site against any person that has entered or in the future enters into a final CERCLA § 122(g),

(42 U.S.C. § 9622(g)), *de minimis* settlement, or a final settlement based on limited ability to pay, with EPA with respect to the Site.

    b.  Exceptions to Waivers.

      (1)  The waivers under this Paragraph 82 shall not apply with respect to any defense, claim, or cause of action that a Settling Party may have against any person otherwise covered by such waivers if such person asserts a claim or cause of action relating to the Site against such Settling Party.

      (2)  The waiver under Paragraph 82.a(1) (De Micromis Waiver) shall not apply to any claim or cause of action against any person otherwise covered by such waiver if EPA determines that: (i) the materials containing hazardous substances contributed to the Site by such person contributed significantly or could contribute significantly, either individually or in the aggregate, to the cost of the response action or natural resource restoration at the Site; or (ii) such person has failed to comply with any information request or administrative subpoena issued pursuant to Section 104(e) or 122(e)(3)(B) of CERCLA, 42 U.S.C. § 9604(e) or 9622(e)(3)(B), or Section 3007 of RCRA, 42 U.S.C. § 6927, or has impeded or is impeding, through action or inaction, the performance of a response action or natural resource restoration with respect to the Site; or if (iii) such person has been convicted of a criminal violation for the conduct to which the waiver would apply and that conviction has not been vitiated on appeal or otherwise.

      (3)  The waiver under Paragraph 82.a(2) (MSW Waiver) shall not apply to any claim or cause of action against any person otherwise covered by such waiver if EPA determines that: (i) the materials containing MSW contributed to the Site by such person contributed significantly or could contribute significantly, either individually or in the aggregate, to the cost of the response action or natural resource restoration at the Site; or (ii) such person

70

has failed to comply with any information request or administrative subpoena issued pursuant to Section 104(e) or 122(e)(3)(B) of CERCLA, 42 U.S.C. § 9604(e) or 9622(e)(3)(B), or Section 3007 of RCRA, 42 U.S.C. § 6927, or (iii) has impeded or is impeding, through action or inaction, the performance of a response action or natural resource restoration with respect to the Site.

(4)     The waivers under Paragraph 82 shall not apply to any proof of claim filed by Settling Work Parties in In Re SRC Liquidation LLC (f/k/a Standard Register Company), Case No. 15-10541 (Bankr. D. Del).

## XVIII.     EFFECT OF SETTLEMENT; CONTRIBUTION

83.     Except as provided in Paragraph 82 (Waiver of Claims by Settling Parties), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree.  Except as provided in Section XVII (Covenants by Settling Parties), each of the Parties expressly reserves any and all rights (including, but not limited to, those pursuant to Section 113 of CERCLA, 42 U.S.C. § 9613), defenses, claims, demands, and causes of action that each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.  Nothing in this Consent Decree diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

84.     The Parties agree, and by entering this CD this Court finds, that this Consent Decree constitutes a judicially-approved settlement pursuant to which each Settling Party has, as of the Effective Date, resolved liability to the United States within the meaning of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and is entitled, as of the Effective Date,

to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for the "matters addressed" in this CD. The "matters addressed" in this Consent Decree are all response actions taken or to be taken and all response costs incurred or to be incurred, at or in connection with the Site, by the United States or any other person, except for the State; provided, however, that if the United States exercises rights under the reservations in Section XVI (Covenants by Plaintiff), other than in Paragraph 75.a (claims for failure to meet a requirement of the CD), 75.g (criminal liability) or 75.h (violations of federal/state law during or after implementation of the Work), the "matters addressed" in this Consent Decree will no longer include those response costs or response actions that are within the scope of the exercised reservation.

85.     The Parties further agree, and by entering this Consent Decree this Court finds, that the complaint filed by the United States in this action is a civil action within the meaning of Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), and that this Consent Decree constitutes a judicially-approved settlement pursuant to which each Settling Defendant has, as of the Effective Date, resolved liability to the United States within the meaning of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B).

86.     Each Settling Party shall, with respect to any suit or claim brought by it for matters related to this Consent Decree, notify the United States in writing no later than 60 days prior to the initiation of such suit or claim.

87.     Each Settling Party shall, with respect to any suit or claim brought against it for matters related to this Consent Decree, notify in writing the United States within 10 days after service of the complaint on such Settling Party. In addition, each Settling Party shall notify the

United States within 10 days after service or receipt of any Motion for Summary Judgment and within 10 days after receipt of any order from a court setting a case for trial.

88. <u>Res Judicata and Other Defenses</u>**.**  In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Parties shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XVI (Covenants by Plaintiff).

# XIX.  ACCESS TO INFORMATION

89. Settling Work Parties shall provide to EPA upon request, copies of all records, reports, documents, and other information (including records, reports, documents, and other information in electronic form) (hereinafter referred to as "Records") within Settling Work Parties' possession or control or that of their contractors or agents relating to activities at the Site or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information regarding the Work.  Settling Work Parties shall also make available to EPA, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

90. <u>Privileged and Protected Claims</u>.

a. Settling Work Parties may assert that all or part of a Record requested by Plaintiff is privileged or protected as provided under federal law, in lieu of providing the Record, provided Settling Work Parties comply with Paragraph 90.b, and except as provided in Paragraph 90.c.

b. If Settling Work Parties assert a claim of privilege or protection, they shall provide Plaintiff with the following information regarding such Record: its title; its date; the name, title, affiliation (e.g., company or firm), and address of the author, of each addressee, and of each recipient; a description of the Record's contents; and the privilege or protection asserted. If a claim of privilege or protection applies only to a portion of a Record, Settling Work Parties shall provide the Record to Plaintiff in redacted form to mask the privileged or protected portion only. Settling Work Parties shall retain all Records that they claim to be privileged or protected until Plaintiff has had a reasonable opportunity to dispute the privilege or protection claim and any such dispute has been resolved in the Settling Work Parties' favor.

c. Settling Work Parties may make no claim of privilege or protection regarding: (1) any data regarding the Site, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, radiological or engineering data, or the portion of any other Record that evidences conditions at or around the Site; or (2) the portion of any Record that Settling Work Parties are required to create or generate pursuant to this Consent Decree.

91. <u>Business Confidential Claims</u>. Settling Work Parties may assert that all or part of a Record provided to Plaintiff under this Section or Section XX (Retention of Records) is business confidential to the extent permitted by and in accordance with Section 104(e)(7) of

CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b). Settling Work Parties shall

segregate and clearly identify all Records or parts thereof submitted under this Consent Decree

for which Settling Work Parties assert business confidentiality claims. Records submitted to

EPA determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R.

Part 2, Subpart B. If no claim of confidentiality accompanies Records when they are submitted

to EPA, or if EPA has notified Settling Work Parties that the Records are not confidential under

the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be

given access to such Records without further notice to Settling Work Parties.

92.     If relevant to the proceeding, the Parties agree that validated sampling or

monitoring data generated in accordance with the SOW and reviewed and approved by EPA

shall be admissible as evidence, without objection, in any proceeding under this Consent Decree.

93.     Notwithstanding any provision of this Consent Decree, Plaintiff retains all of its

information gathering and inspection authorities and rights, including enforcement actions

related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

## XX.   RETENTION OF RECORDS

94.     Until ten years after EPA's Certification of Work Completion under Paragraph

4.9 of the SOW, each Settling Work Party shall preserve and retain all non-identical copies of

Records (including Records in electronic form) now in its possession or control or that come into

its possession or control that relate in any manner to its liability under CERCLA with respect to

the Site, provided, however, that Settling Work Parties who are potentially liable as owners or

operators of the Site must retain, in addition, all Records that relate to the liability of any other

person under CERCLA with respect to the Site. Each Settling Work Party may preserve and

retain such Records in a single, combined repository with the Records of other Settling Work

Parties, provided that (i) the repository is acceptable to EPA, (ii) each Settling Work Party retains possession and control of all Records that it stores at the repository, and (iii) each Settling Work Party ensures that its Records are marked, indexed, and maintained at the repository in such a manner that any person can identify and collect those Records.

95.     Each Settling Work Party must also retain, and instruct its contractors and agents to preserve, for the same period of time specified in Paragraph 94 above, all non-identical copies of the last draft or final version of any Records (including Records in electronic form) now in its possession or control or that come into its possession or control that relate in any manner to the performance of the Work, provided, however, that each Settling Work Party (and its contractors and agents) must retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned Records required to be retained.  Each Settling Work Party may preserve and retain such Records and data in a single, combined repository with the Records and data of other Settling Work Parties, provided that (i) the repository is acceptable to EPA, (ii) each Settling Work Party retains possession and control of all Records and data that it stores at the repository, and (iii) each Settling Work Party ensures that its Records and data documents are marked, indexed, and maintained at the repository in such a manner that any person can identify and collect those Records and data.

96.     Each of the above record retention requirements in Paragraphs 94 and 95 shall apply regardless of any corporate retention policy to the contrary.

97.     At the conclusion of this record retention period, Settling Work Parties shall notify the United States at least 90 days prior to the destruction of any such Records, and, upon request by the United States, and except as provided in Paragraph 90 (Privileged and Protected Claims), Settling Work Parties shall deliver any such Records to EPA.

98.     Each Settling Work Party certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed, or otherwise disposed of any Records (other than identical copies) relating to its potential liability regarding the Site since notification of potential liability by the United States or the State and that it has fully complied with any and all EPA and State requests for information regarding the Site pursuant to Sections 104(e) and 122(e)(3)(B) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e)(3)(B), and Section 3007 of RCRA, 42 U.S.C. § 6927, and state law.

## XXI.   NOTICES AND SUBMISSIONS

99.     All approvals, consents, deliverables, modifications, notices, notifications, objections, proposals, reports, and requests specified in this Consent must be in writing unless otherwise specified.  Whenever, under this Consent Decree, notice is required to be given, or a report or other document is required to be sent, by one Party to another, it must be directed to the person(s) specified below at the address(es) specified below.  Any Party may change the person and/or address applicable to it by providing notice of such change to all Parties.  All notices under this Section are effective upon receipt, unless otherwise specified.  Notices required to be sent to EPA, and not to the United States, should not be sent to the DOJ.  Except as otherwise provided, notice to a Party by email (if that option is provided below) or by regular mail in accordance with this Section satisfies any notice requirement of the Consent Decree regarding such Party.

As to the United States:

EES Case Management Unit
U.S. Department of Justice
Environment and Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044-7611
eescdcopy.enrd@usdoj.gov
Re: DJ # 90-11-3-11076


As to EPA:

Director, Superfund Division
U.S. Environmental Protection Agency
Region 5
77 West Jackson Blvd.
Chicago, IL 60604


and:

Dion Novak
EPA Remedial Project Manager
U.S. Environmental Protection Agency
Region 5 (SR-6J)
77 West Jackson Blvd.
Chicago, IL  60604
novak.dion@epa.gov
(312) 886-4737


As to the EPA Regional Financial
Management Officer:

Justin Abrams, Accountant, USEPA
Region 5, RMD, CB/PAAS
77 West Jackson Blvd., MC:MF-10J
Chicago, IL 60604


As to EPA Cincinnati Finance
Center:

EPA Cincinnati Finance Center
26 W. Martin Luther King Drive
Cincinnati, Ohio 45268
cinwd_acctsreceivable@epa.gov

As to Settling Work Parties:          Mike Samples
Settling Work Parties' Project Coordinator
*de maximis, Inc.*
450 Montbrook Lane
Knoxville, TN 27919
(865) 691-5052
Mikes@demaximis.com

With a copy to:

Steve N. Siegel, Esq.
Dinsmore & Shohl LLP
255 East 5th Street
Suite 1900
Cincinnati, OH 45202

Christopher Murphy
NCR Corporation
3097 Satellite Boulevard
Duluth, Georgia 30096

Scott Blackhurst, Esq.
Senior Counsel - Health, Safety and Environment
ZF TRW
Active & Passive Safety Technology
12001 Tech Center Drive
Livonia, Michigan USA 48150

Cargill Law
Starches and Sweeteners Environmental Counsel
15407 McGinty Road West MS24
Wayzata, MN 55391

# XXII.   RETENTION OF JURISDICTION

100.    This Court retains jurisdiction over both the subject matter of this Consent Decree and Settling Parties for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the

construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIV (Dispute Resolution).

## XXIII.  APPENDICES

101.    The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the ROD.

"Appendix B" is the SOW.

"Appendix C" is map of the Site.

"Appendix D" is the complete list of Settling Work Parties.

"Appendix E" is the complete list of parties eligible to join this Consent Decree as an Other Settling Party.

"Appendix F" is the form for the Environmental Covenant Amendment.

"Appendix G" is the sample Agreement for transferees of Affected Properties owned by Settling Parties.

## XXIV.  MODIFICATION

102.    Except as provided in Paragraph 13 (Modification of SOW or Related Deliverables), material modifications to this Consent Decree, including the SOW, shall be in writing, signed by the United States and Settling Work Parties, and shall be effective upon approval by the Court. Except as provided in Paragraph 13, non-material modifications to this CD, including the SOW, shall be in writing and shall be effective when signed by duly authorized representatives of the United States and the Settling Work Parties.  A modification to the SOW shall be considered material if it implements a ROD amendment that fundamentally alters the basic features of the selected remedy within the meaning of 40 C.F.R. § 300.435(c)(2)(ii).  Before providing its approval to any modification to the SOW, the United

States will provide the State with a reasonable opportunity to review and comment on the proposed modification.

103.    Modifications (non-material and material) may be executed without the signatures of Other Settling Parties where such modifications (a) relate to the Work or (b) do not affect the obligations of or the protections afforded to the Other Settling Parties.

104.    Nothing in this Consent Decree shall be deemed to alter the Court's power to enforce, supervise, or approve modifications to this Consent Decree.

## XXV.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

105.    This Consent shall be lodged with the Court for at least 30 days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations that indicate that the Consent Decree is inappropriate, improper, or inadequate.  Settling Parties consent to the entry of this Consent Decree without further notice.

106.    If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between or among the Parties.

## XXVI.        SIGNATORIES/SERVICE

107.    Each undersigned representative of a Settling Party to this Consent Decree and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

108.     Each Settling Party agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified Settling Party in writing that it no longer supports entry of the Consent Decree.

109.     Each Settling Party shall identify, on the attached signature page, the name, address, and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree. Settling Parties agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons. Settling Parties need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXVII.     FINAL JUDGMENT

110.     This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties regarding the settlement embodied in the Consent Decree. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

111.     Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States and Settling Parties. The Court enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS 30th DAY OF October , 2018.


   s/Thomas M. Rose

United States District Judge

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of UNITED STATES v. BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC, *et al*. regarding the Valleycrest Landfill Superfund Site.

FOR THE UNITED STATES OF AMERICA:

2/26/17
Date

Bruce Gelber
Deputy Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

Joseph W.C. Warren
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044

Benjamin C. Glassman
United States Attorney
Southern District of Ohio

Kevin Koller
Assistant U.S. Attorney
Southern District of Ohio
Federal Building, Suite 602
200 W. Second Street
Dayton, OH 45400
(937) 225-2910

Of Counsel

Nicole Wood-Chi
Associate Regional Counsel
U.S. Environmental Protection Agency-Region 5
77 West Jackson Blvd.
Chicago, IL 60604-3507

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of UNITED STATES v. BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC. *et al.* regarding the Valleycrest Landfill Superfund Site.

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

*for*

Margaret Guerriero, Acting Director
Superfund Division
U.S. Environmental Protection Agency
Region 5
77 West Jackson Blvd.
Chicago, IL 60604

Nicole Wood-Chi, Assistant Regional Counsel
U.S. Environmental Protection Agency
Region 5
77 West Jackson Blvd.
Chicago, IL 60604

THE UNDERSIGNED SETTLING WORK PARTY enters into this Consent Decree in the matter of UNITED STATES v. BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC, *et al.* regarding the Valleycrest Landfill Superfund Site.

FOR BRIDGESTONE AMERICAS TIRE
OPERATIONS, LLC

8/31/17
Date

Signature: _____
Name (print): Christopher R. Nicasero
Title: Vice President, General Counsel
Address: Bridgestone Americas Inc.
535 Marriott Drive
Nashville, TN 37214

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Andy Thompson
Senior Counsel - Environmental, Health & Safety
Bridgestone Americas, Inc.
535 Marriott Drive
Nashville, TN 37214
Email: thompsonandy@bfusa.com

and

William D. Wick, Esq.
Wactor & Wick LLP
Environmental Attorneys
180 Grand Avenue, Suite 950
Oakland, CA 94612
Email: bwick@ww-envlaw.com

THE UNDERSIGNED SETTLING WORK PARTY enters into this Consent Decree in the matter of UNITED STATES v. BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC, *et al.* regarding the Valleycrest Landfill Superfund Site.

FOR CARGILL, INC.

8-23-17
Date

Signature: Gavin Atkinson
Name (print): GAVIN ATKINSON
Title: V P, OPERATIONS LEADER
Address: 15407 MCGINTY ROAD WEST/ MS 62
WAYZATA, MN 55391

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Cargill Law
Starches and Sweeteners Environmental Counsel
15407 McGinty Road West MS24
Wayzata, MN 55391

THE UNDERSIGNED SETTLING WORK PARTY enters into this Consent Decree in the matter of UNITED STATES v. BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC, *et al.* regarding the Valleycrest Landfill Superfund Site.

FOR FLOWSERVE CORPORATION

8/29/17
Date

Signature:
Name (print): Sara Kate Jancaitis
Title: Senior Litigation Counsel
Address: 5215 N. O'Connor Blvd., Ste. 2300
Irving, Texas 75039

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Steve N. Siegel, Esq.
Attorney at Law
Dinsmore & Shohl LLP
255 East 5th Street, Suite 1900
Cincinnati, OH 45202

THE UNDERSIGNED SETTLING WORK PARTY enters into this Consent Decree in the matter of UNITED STATES v. BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC, *et al.* regarding the Valleycrest Landfill Superfund Site.

FOR KELSEY-HAYES COMPANY

_8/22/2017_
Date

Signature: _____
Name (print): Sarah Kirkwood
Title: Sr. VP & General Counsel
Address: ZF TRW
12001 Tech Center Drive
Livonia, MI USA 48150

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Scott Blackhurst, Esq.
Senior Counsel - Health, Safety and Environment
ZF TRW
Active & Passive Safety Technology
12001 Tech Center Drive
Livonia, Michigan USA 48150

THE UNDERSIGNED SETTLING WORK PARTY enters into this Consent Decree in the matter of UNITED STATES v. BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC, *et al.* regarding the Valleycrest Landfill Superfund Site.

FOR NCR CORPORATION

8-29-2017

Date

Signature: _Eww Gm_

Name (print): Edward Gallagher

Title: General Counsel

Address: 250 Greenwich St.

New York NY 10007

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Law.Notices@ncr.com

and

Christopher Murphy
NCR Corporation
3097 Satellite Boulevard
Duluth, Georgia 30096

THE UNDERSIGNED SETTLING WORK PARTY enters into this Consent Decree in the matter of UNITED STATES v. BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC, *et al.* regarding the Valleycrest Landfill Superfund Site.

FOR NORTHROP GRUMMAN SYSTEMS
CORPORATION

9/7/2017
Date

Signature: _____

Name (print): Mark Caylor

Title: Corp. VP & President, Enterprise Services

Address: Northrop Grumman Corporation
2980 Fairview Park Drive
Falls Church, VA 22042

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

C T Corporation System
1300 East Ninth Street
Cleveland, OH 44114

91

THE UNDERSIGNED SETTLING WORK PARTY enters into this Consent Decree in the matter of UNITED STATES v. BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC, *et al.* regarding the Valleycrest Landfill Superfund Site.

FOR WASTE MANAGEMENT OF OHIO, INC.

*14 Sept 2017*
Date

Signature: _____
Name (print): *James C. Foeney*
Title: *Group Director*
Address: *3893 Okemos Road, Suite B4*
*Okemos, MI 48864*

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Michelle Gale, Esq.
Sr. Legal Counsel
Waste Management
720 East Butterfield Road
Lombard, IL 60148

and

James C. Forney
Group Director
Closed Sites Management Group
Waste Management
3893 Okemos Road, Suite B4
Okemos, MI 48864-3345

THE UNDERSIGNED OTHER SETTLING PARTY hereby assents to all terms of the UNITED STATES v. BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC, *et al.* Consent Decree relating to Valleycrest Landfill Superfund Site applicable to the "Settling Parties" and the "Other Settling Parties," including the pertinent provisions of Section XVII (Covenants by the Settling Parties). The Consent Decree shall apply to and bind the undersigned "Other Settling Party" upon the later of the Consent Decree's Effective Date or the date on which this Consent Decree signature page is filed with the Court in this action.

FOR _____
            Print or Type Company Name


_____
Date


                                    Signature: _____
                                    Name (print):
                                    Title:
                                    Address:




Agent Authorized to Accept Service        Name (print):
on Behalf of Above-signed Party:          Title:
                                          Address:
                                          Phone:
                                          email: